**Mack RUFFIN, Jr.,
Petitioner–Appellant–Cross–Appellee,**

v.

**Richard L. DUGGER, Secretary, Florida Department of Offender Rehabilitation, and Tom Barton, Superintendent, Florida State Prison at Starke, Florida, Respondents–Appellees–Cross–Appellants.**

**No. 86–3485.**

United States Court of Appeals,
Eleventh Circuit.

June 20, 1988.

Asa D. Sokolow, Naomi G. Litvin, Rosenman & Colin, New York City, Joyce Davis,

Marc E. Taps, Tallahassee, Fla., for petitioner-appellant-cross-appellee.

William I. Munsey, Jr., Asst. Atty. Gen., Tampa, Fla., for respondents-appellees-cross-appellants.

Before TJOFLAT, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

Petitioner, Mack Ruffin, Jr., is a Florida death row inmate, having been convicted and sentenced to death for premeditated murder. Petitioner is also serving a thirty-year prison sentence for sexual assault, a crime associated with the murder. He seeks a writ of habeas corpus setting aside both of his convictions and his death sentence. The district court refused to issue the writ, concluding that none of petitioner's claims disclosed federal constitutional error. We affirm the district court's refusal to set aside petitioner's convictions, but find that petitioner's death sentence is the product of an unconstitutional jury instruction.

I.

Petitioner was convicted of sexually assaulting and murdering Karol Hurst on the afternoon of February 21, 1978, near Webster, Florida. According to two confessions petitioner gave to the police after his arrest[1] and the other evidence the State presented at trial, the following took place that day. Petitioner and an accomplice, Freddie Lee Hall, decided to rob a Shop-And-Go convenience store in Ridge Manor, Florida, and needed a getaway car. To

---

1. At petitioner's trial, the State introduced two confessions into evidence. Petitioner gave the first confession immediately after his arrest, before he led the police to the victim's body; he gave the second confession, which was tape recorded, the following day. Prior to trial, petitioner moved to suppress these confessions, and the court denied his motion. He did not challenge this ruling on appeal. Petitioner sought to relitigate his motion to suppress in a Fla.R. Crim.P. 3.850 motion to the state trial court, see infra note 4, but the court refused to entertain the motion because its subject matter is cognizable only on direct appeal. The district court, in the proceeding below, refused to review the merits of petitioner's motion to suppress because his failure to raise the matter on direct appeal precluded the Supreme Court of Florida from passing on them. See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The district court's ruling was correct; accordingly, we do not review the merits of petitioner's challenge to his confessions.

obtain one, they went, in petitioner's automobile, to a Pantry Pride grocery store parking lot in Leesburg, Florida. On arrival, they saw Mrs. Hurst, who was seven months pregnant, carrying some groceries to her car. Petitioner and Hall, each armed with a pistol, confronted Mrs. Hurst, and Hall forced her into her car. Hall got into the car with her and drove several miles to a secluded wooded area near Webster; petitioner followed in his car. Petitioner and Hall then raped Mrs. Hurst in the back seat of the car. When they finished, they ordered her out of the car. Hall wanted to kill Mrs. Hurst so that she could not identify them, but petitioner suggested that they simply leave her, bound and gagged, in the woods. Mrs. Hurst begged them to spare her life and wrote them a check for $20,000, payable to "John Doe." Petitioner refused to accept the check; whereupon, Hall pistol-whipped Mrs. Hurst and, while she was lying face down on the ground, shot her in the back of the head.

That evening, petitioner and Hall drove Mrs. Hurst's car to the Shop–And–Go store they had planned to rob and entered the store. The store was crowded, so they loitered for twenty minutes in the rear aisle, waiting for some of the customers to leave. The store manager noticed them, became suspicious, and called the sheriff. Meanwhile, petitioner and Hall decided that the store was too crowded and they left, intending to return later in the evening. As they exited the store, they encountered Deputy Sheriff Lonnie Coburn, armed with a shotgun, who was responding to the manager's call. Coburn ordered petitioner and Hall to assume a "spread eagle" position against his patrol car and began to frisk them for weapons. While Coburn was frisking Hall, Hall attacked him. During the struggle that ensued, Hall grabbed Co-

burn's service revolver and knocked Coburn to the ground. Hall then shot Coburn to death.

Petitioner and Hall fled the scene in Mrs. Hurst's car, pursued by another deputy sheriff. During the chase, petitioner shot at the pursuing deputy with Coburn's revolver. Petitioner and Hall eventually abandoned Mrs. Hurst's automobile in an orange grove and fled on foot. A few hours later, the police apprehended them.

Petitioner was indicted and tried for the sexual assault and premeditated murder of Mrs. Hurst.[2] At trial, the State established the facts we have recited. Petitioner put on no defense. With respect to the murder charge, his attorney's sole argument to the jury was that the State had not proved beyond a reasonable doubt that petitioner intended Mrs. Hurst's death.[3]

The jury found petitioner guilty as charged. During the sentencing phase of the trial, conducted after the jury convicted petitioner of murder, petitioner's attorney introduced as mitigating evidence the report of a psychiatric examination conducted for the purpose of determining petitioner's competence to stand trial. Drawing on various pieces of mitigating evidence contained in that report, petitioner's lack of an adult criminal record, Hall's alleged domination of petitioner, and the fact that Hall insisted on disposing of the victim to prevent her from becoming a witness, counsel, in his closing argument, urged the jury to recommend a life sentence. The jury recommended the death penalty, however, and the court followed the jury's recommendation, sentencing petitioner to death.

Petitioner appealed his convictions and sentences to the Supreme Court of Florida, which affirmed. *Ruffin v. State,* 397 So.2d 277 (Fla.1981). Petitioner's application to

---

**2.** Petitioner also was charged with the kidnapping, grand larceny, and robbery of Mrs. Hurst. These charges were dismissed on the State's motion prior to trial.

Hall also was indicted for the murder of Mrs. Hurst. He was tried separately, convicted, and received a sentence of death. *See Hall v. State,* 403 So.2d 1321 (Fla.1981).

In another indictment, petitioner and Hall were charged with the murder of Coburn. They

were tried jointly on this charge. Both were convicted and sentenced to prison for life. *See Hall v. State,* 403 So.2d 1319 (Fla.1981) (per curiam).

**3.** With respect to the charge of sexual assault, counsel argued that the State had not proved beyond a reasonable doubt that petitioner had actually raped the victim.

the Supreme Court of the United States for a writ of certiorari was denied. *Ruffin v. Florida*, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981).

After exhausting his state remedies,[4] petitioner brought this action in the district court for habeas corpus relief, challenging the validity of his convictions and his death sentence on the nine grounds enumerated in the margin.[5] The district court summarily rejected each ground, concluding that the record of petitioner's state court trial and collateral review proceedings demonstrated as a matter of law that petitioner was not entitled to relief.

Petitioner now appeals. He contends that he has made out a case for habeas relief on each of the grounds asserted in his petition to the district court and asks us to remand the case to the district court for an evidentiary hearing.

We find no constitutional infirmity in petitioner's convictions, and reject without discussion the errors petitioner assigns to them. With respect to petitioner's death sentence, two claimed errors are worthy of discussion; one of them, as we noted at the outset, requires us to remand the case to the district court for further proceedings.

## II.

Petitioner contends that the eighth and fourteenth amendments precluded the court from imposing capital punishment because the jury made no finding that he intended Mrs. Hurst's death. It is true that a defendant cannot be sentenced to death unless he intended the victim's death, *see Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 3378-79, 73 L.Ed.2d 1140 (1982), or unless he displayed "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death." *Tison v. Arizona*, —— U.S. ——, ——, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987). In this case, however, the jury, in finding petitioner guilty of premeditated murder, necessarily concluded that petitioner intended Mrs. Hurst's death. An examination of the court's charge to the jury at the conclusion of the guilt phase of petitioner's trial makes this point clear.

At the conclusion of the guilt phase of the trial, the court instructed the jury as follows:

> THE COURT: Ladies and gentlemen of the jury, you have listened carefully to the evidence and the arguments of the attorneys. I now ask you to give the

**4.** After the United States Supreme Court denied petitioner's application for a writ of certiorari in 1981, petitioner moved the state trial court, pursuant to Fla.R.Crim.P. 3.850, to set aside his convictions for murder and sexual assault and his death sentence. The court denied his motion without an evidentiary hearing. The Supreme Court of Florida affirmed. *Ruffin v. State*, 420 So.2d 591 (Fla.1982) (per curiam). Petitioner then brought this habeas corpus action in the district court. Because some of the claims in his petition had not been exhausted, the district court stayed further proceedings in the case to permit petitioner to repair to state court. Petitioner then applied to the Florida Supreme Court for a writ of habeas corpus, without success. *See Ruffin v. Wainwright*, 461 So.2d 109 (Fla.1984). Petitioner thereafter returned to the district court to litigate his habeas petition.

**5.** Petitioner claimed that his convictions for murder and sexual assault are invalid because (1) the grand jury that indicted him did not contain a fair cross section of the community as required by the sixth and fourteenth amendments, (2) the prosecutor intentionally excluded blacks from his petit jury through the exercise of peremptory challenges in violation of the fourteenth amendment's equal protection clause, (3) his convictions were the product of illegal confessions in violation of the fourteenth amendment's due process clause, and (4) the evidence was insufficient to establish the crimes of which he was convicted again in violation of the due process clause. Petitioner challenged the validity of both the guilt and sentencing phases of his trial on the grounds that they were (5) fundamentally unfair in violation of the due process clause, and (6) the product of ineffective assistance of counsel in violation of the sixth and fourteenth amendments. Petitioner challenged his death sentence on the additional grounds that (7) the jury failed to find that he intended the victim's death as required by the eighth and fourteenth amendments, (8) the trial judge, in charging the jury on its sentencing recommendation, precluded the jury from considering certain mitigating evidence, contrary to the eighth and fourteenth amendments, and (9) the Florida death penalty scheme is applied in a racially discriminatory fashion in violation of the fourteenth amendment's equal protection clause.

same careful attention to the law as determined by the Court which you must apply to the facts as you find them from the evidence. You, alone, as jurors sworn to try this case, must pass on the issues of fact, and your verdict must be based solely on the evidence or lack of evidence, and the law as it is given to you by the Court.

The defendant, C. Mack Ruffin, Jr., together with another not on trial at this time, is charged with the crime of *first degree murder* and also the crime of sexual battery against Karol Lea Hurst, in that on February 21, 1978, in Sumter County, Florida, he did unlawfully, *from a premeditated design* to effect the death of Karol Lea Hurst, a human being, or any human being, kill and murder the said Karol Lea Hurst by shooting her with a pistol, a further and more particular description being to this Body unknown, in violation of Florida Statute 782.04.

[The court then instructed the jury on the lesser included offenses, e.g., second-degree murder.]

. . . .

The defendant has entered his pleas of not guilty. The effect of these pleas is to require the State to prove each material allegation of the indictments beyond and to the exclusion of every reasonable doubt before the defendant may be found guilty.

A person may commit a crime by his own personal act, or through the act or acts of another person. Any person who knowingly aids, abets, counsels, hires, or otherwise procures the commission of a crime, is equally guilty with the one who actually performs the criminal act, whether he is or is not present at the commission of the offense. *However, for one person to be guilty of a crime physically committed by another, it is necessary that he have a conscious intent that the criminal act shall be done,* and that pursuant to that intent he do some act or say some word which was intended to and which did incite, encourage, assist, induce, or cause another person to actually commit the crime.

. . . .

*[M]urder in the first degree[ ] is the unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or any human being.*

*A premeditated design to kill is a fully-formed conscious purpose to take human life,* formed upon reflection and present in the mind at the time of the killing. The law does not fix the exact period of time which must pass between the formation of the intent to kill and the carrying out of the intent. It may be only a short time and yet make the killing premeditated, if the fixed intent to kill was formed long enough before the actual killing to permit of some reflection on the part of the person performing it, and that person was at the time of carrying out that intent fully conscious of a *settled and fixed purpose to kill* and of the results which would follow such killing. When such state of mind exists there is a premeditated design to kill, although the killing follows closely upon the formation of the intent.

. . . .

The punishment provided by law for murder in the first degree is life imprisonment, or death, as may be determined by the Court at a later proceeding.

Murder in the second degree is the killing of a human being by the perpetration of an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without a premeditated design to effect the death of any particular individual.

. . . .

*If the defendant, in killing the deceased, acted from a premeditated design to effect the death of the deceased, or some other human being, he should be found guilty of murder in the first degree.*

If the killing was not from a premeditated design to effect the death of any human being but was in the perpetration of an act imminently dangerous to another evincing a depraved mind regardless of human life, the defendant should be

found guilty of murder in the second degree.

(Emphasis added.)

■ This instruction clearly explained to the jury that to find petitioner guilty of murder, it had to conclude beyond a reasonable doubt that he acted with a premeditated design to cause death. Thus, when the jury found petitioner guilty of murder, it necessarily determined as a fact that petitioner killed with premeditation; in other words, the jury found that he intended the victim's death. *See Raulerson v. Wainwright,* 753 F.2d 869, 876 (11th Cir.1985) (per curiam) ("Jurors are presumed to follow the law as they are instructed.").

Judge Hatchett, in his dissent, disagrees with this analysis of petitioner's *Enmund* claim in three respects.[6] First, he argues that *Enmund* and its progeny require an *express* finding that the defendant intended the victim's death. *See post* at 1522. We find no such requirement in the case law. Logic suggests that the finding of intent *implicit* in a verdict of premeditated murder should suffice.

Assuming that an implicit finding is sufficient, Judge Hatchett argues that the verdict in this case contains no such finding. *See post* at 1520–1521. We reject this argument out of hand. As discussed above, the court's charge instructed the jury that it could not find petitioner guilty of murder unless it found premeditation on his part. The jury's conclusion that petitioner acted with premeditation thus satisfied *Enmund.*

■ Judge Hatchett's third point of disagreement with our analysis is that the finding that the defendant intended the victim's death must be made at some time following the guilt phase of the defendant's trial. *See post* at 1521. Accordingly, under Florida's death penalty model, the finding must be made by the jury at the conclusion of the sentencing phase of the defendant's trial, by the trial judge when he imposes the death sentence, or by the state supreme court when it reviews the sentence on direct appeal.

We submit that the *Enmund* determination need not be made after the guilt phase of the defendant's trial has concluded. *Enmund* does not dictate *when* the state must make the requisite finding of intent, *who* must make it, or *how* it must be made. "The Eighth Amendment is satisfied so long as the death penalty is not imposed upon a person ineligible under *Enmund* for such punishment." *Cabana v. Bullock,* 474 U.S. 376, 386, 106 S.Ct. 689, 697, 88 L.Ed.2d 704 (1986). We have previously held that a conviction for a degree of murder that requires, as an element of the crime, an intent to kill necessarily establishes the degree of culpability *Enmund* requires. *See, e.g., Johnson v. Kemp,* 759 F.2d 1503, 1507 (11th Cir.1985) (conviction of malice murder disposes of *Enmund* claim); *Hall v. Wainwright,* 733 F.2d 766, 771–72 (11th Cir.1984) (per curiam) (distinguishing *Enmund* on the ground that jury instruction in *Hall* required finding of premeditation in order to convict defendant), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985); *see also Fleming v. Kemp,* 748 F.2d 1435, 1452–54 (11th Cir. 1984) (*Enmund* requirement satisfied when jury instruction, viewed as a whole, mandated a finding of malice aforethought, despite judge's erroneous instruction on felony-murder), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986). Thus, when the jury found petitioner guilty of premeditated murder, the *Enmund* rule was satisfied.[7]

---

6. It should be noted that Judge Hatchett concurs in our view that the State presented sufficient evidence to convict petitioner of premeditated murder. He therefore agrees that a reasonable jury could conclude that petitioner intended Mrs. Hurst's death.

7. Although the trial jury, in convicting petitioner of premeditated murder, necessarily found that petitioner intended Mrs. Hurst's death, the recent decision in *Tison v. Arizona,* —— U.S. ——, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987),

provides alternative support for denying petitioner's *Enmund* claim. Under *Tison,* a state may impose a death sentence on a defendant who has acted with reckless disregard for human life. *Id.* at ——, 107 S.Ct. at 1688.

This standard is clearly met in this case. In petitioner's first Rule 3.850 proceeding, the state trial court considered his *Enmund* claim, notwithstanding the claim's cognizability on direct appeal as opposed to collateral review. The trial court entertained the claim on the merits

### III.

Petitioner contends that his death sentence should be set aside because the trial judge, in charging the jury as to its sentencing options, to wit, the death penalty or imprisonment for life, precluded the jury from considering evidence before the jury which, petitioner contends, may have prompted it to recommend a life sentence. The eighth and fourteenth amendments require that the sentencer in a capital case [8] consider any evidence which mitigates against the imposition of the death penalty. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality).

In charging the jury in petitioner's case, the trial judge allegedly violated *Lockett*'s command because he suggested that the only mitigating factors the jury could consider were those enumerated in the Florida death penalty statute, Fla.Stat. § 921.141 (1987). The court instructed the jury with respect to mitigating factors as follows:

> Should you find sufficient of these aggravating circumstances to exist, it will then be your duty to determine whether or not sufficient mitigating circumstances exist to outweigh the aggravating circumstances found to exist. *The mitigating circumstances which you may consider*, if established by the evidence, *are these....*

because, the court concluded, the claim was based on a legal principle not recognized at the time petitioner prosecuted his direct appeal. In rejecting his *Enmund* claim, the trial court observed:

> Ruffin was present, he assisted codefendant Hall in the kidnapping of Karol Hurst, raped her along with his partner, knew that Hall was going to kill her and made no effort to interfere with the killing and then continued on the joint venture, utilizing Mrs. Hurst's vehicle to drive to the convenience store (the site of an intended robbery) where Deputy Coburn was murdered and Ruffin continued his partnership with Hall by firing a gun at pursuing Deputy Janes.
>
> The evidence is abundantly clear and sufficient to demonstrate Ruffin's joint participation in the premeditated murder of Karol Hurst....

*See Ruffin v. State*, 420 So.2d 591, 594 (Fla. 1982) (per curiam) (quoting trial court's dispositive order). This statement, which is presumptively correct, *see Cabana v. Bullock*, 474 U.S.

(Emphasis added.) The court then read to the jury the seven statutory mitigating factors set forth in section 921.141; it did not, however, instruct the jury that it could consider any other mitigating evidence present in the record.

The district court found no violation of the *Lockett* rule because the trial judge "read the entire list of statutorily mitigating circumstances to the advisory jury and did not affirmatively suggest that this list was exhaustive." That the trial judge did not state that the statutory list was exhaustive, however, did not save the instruction. *Hitchcock v. Dugger*, —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), decided after the district court denied the writ, holds that the *Lockett* rule is violated where, as here, the jury is not instructed to consider nonstatutory mitigating factors as well as the mitigating factors enumerated in the statute. *Id.* at ——, 107 S.Ct. at 1824.

The instruction in this case advised the jury that the only mitigating factors it could consider were those set forth in the statute. The instruction is virtually indistinguishable from the instruction the Supreme Court condemned in *Hitchcock*,[9] and the instruction we condemned in *Hargrave v. Dugger*, 832 F.2d 1528 (11th Cir.1987) (en banc).[10] Given this precedent, we must

376, 388, 106 S.Ct. 689, 697–98, 88 L.Ed.2d 704 (1986); *see also* 28 U.S.C. § 2254(d) (1982), is a more than adequate finding that petitioner acted, *in the very least*, with reckless disregard for human life.

8. Although the jury is not the sentencer in Florida's capital sentencing scheme, it is treated as such for eighth and fourteenth amendment purposes. *See, e.g., Hitchcock v. Dugger*, —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

9. In *Hitchcock*, the trial judge instructed the jury that "[t]he mitigating circumstances which you may consider shall be the following...." The court then read the statutory mitigating factors set out in Fla.Stat. § 921.141 (1987). *Hitchcock*, —— U.S. at ——, 107 S.Ct. at 1824.

10. In *Hargrave*, the trial court instructed the jury that "[t]he mitigating circumstances which you may consider, if established by the evidence, are as follows...." The court then read the statutory mitigating factors set out in Fla.

conclude that the trial court committed constitutional error in charging the jury at the conclusion of the sentencing phase of petitioner's trial. We therefore remand petitioner's *Lockett* claim to the district court with instructions to enter an order granting the application for a writ of habeas corpus, unless the State within a reasonable period of time either resentences petitioner in a proceeding that comports with the requirements of *Lockett* or vacates the death sentence and imposes a lesser sentence consistent with law. *See Hitchcock*, 107 S.Ct. at 1824–25; *Hargrave*, 832 F.2d at 1535.

AFFIRMED in part, VACATED in part, and REMANDED with instructions.

CLARK, Circuit Judge, specially concurring:

I concur in the result and in all of Parts I and III of the majority opinion. With respect to Part II, the *Enmund* issue, I concur because the Florida judiciary has made the necessary *Enmund* findings in Ruffin's case as required by *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). As pointed out in note 7 of the per curiam opinion, both the Florida trial court and the Florida Supreme Court considered the *Enmund* issue, *see Ruffin v. State*, 420 So.2d 591 (Fla.1982). The Florida Supreme Court at page 594 of its opinion quotes the trial court's findings distinguishing *Ruffin* from *Enmund* and found the trial court's findings to be supported by the record.

I disagree with the analysis in the per curiam opinion based upon this statement:
In this case, however, the jury, in finding petitioner guilty of premeditated murder, necessarily concluded that petitioner intended Mrs. Hurst's death. An examination of the court's charge to the jury at the conclusion of the guilt phase of petitioner's trial makes this point clear.
At 1515. As made clear by the Supreme Court in *Cabana*, a decision of an *Enmund* issue is not made by the jury:
But our ruling in *Enmund* does not concern the guilt or innocence of the defend-

ant—it establishes no new elements of the crime of murder that must be found by the jury. Rather, as the Fifth Circuit itself recognized, *Enmund* "does not affect the state's definition of any substantive offense, even a capital offense." *Reddix v. Thigpen*, 728 F.2d [705], at 709; *see also Enmund*, 458 U.S., at 810, n. 19, 102 S.Ct., at 3383, n. 19 (O'Connor, J., dissenting). *Enmund* holds only that the principles of proportionality embodied in the Eighth Amendment bar imposition of the death penalty upon a class of persons who may nonetheless be guilty of the crime of capital murder as defined by state law; that is, the class of murderers who did not themselves kill, attempt to kill, or intend to kill.

\*   \*   \*   \*   \*   \*

[T]he decision whether a sentence is so disproportionate as to violate the Eighth Amendment in any particular case, like other questions bearing on whether a criminal defendant's constitutional rights have been violated, has long been viewed as one that a trial judge or an appellate court is fully competent to make.
106 S.Ct., at 696–97 (footnote omitted).

The law is clear that a defendant is entitled to consideration of an *Enmund* claim notwithstanding the jury instructions.

TJOFLAT, Circuit Judge, concurring in part and dissenting in part:

I concur in parts I and II of the court's opinion, and in all but the final paragraph of part III, which sets aside petitioner's death sentence. Petitioner is not entitled to a new sentencing hearing if the *Lockett* error was harmless beyond a reasonable doubt. *Hitchcock v. Dugger*, —— U.S. ——, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347 (1987). The court, however, fails to consider the possibility that the *Lockett* error may have had no prejudicial effect on petitioner's sentencing proceeding. We should address the harmless error issue or remand the issue to the district court. Because the parties neither briefed the issue nor alluded to it in oral argument to this panel, I would

Stat. § 921.141 (1987). *Hargrave*, 832 F.2d at     1534.

remand the question of the prejudice caused by the *Lockett* error to the district court.

HATCHETT, Circuit Judge, concurring in part and dissenting in part:

Although I concur in Parts I and III of the majority's opinion, I respectfully dissent from Part II of the opinion.

In *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the Supreme Court held that the eighth amendment forbids imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Enmund,* 458 U.S. at 797, 102 S.Ct. at 3376–77.

In determining that Ruffin's *Enmund* claim fails, the majority reasons that "when the jury found petitioner guilty of murder, it necessarily determined as a fact that petitioner killed with premeditation; in other words the jury found that he intended the victim's death." *Ante* at 1517. Moreover, the majority reasons, "[l]ogic suggests that the finding of intent *implicit* in a verdict of premeditated murder should suffice." *Ante* at 1517.

The majority's reasoning is predicated on a false premise. The Supreme Court has made it clear that " '*Enmund* does not affect [a] state's definition of a substantive offense, even a capital offense.' " *Cabana v. Bullock,* 474 U.S. 376, 385, 106 S.Ct. 689, 696, 88 L.Ed.2d 704, 715 (1986) (quoting *Reddix v. Thigpen,* 728 F.2d 705, 709 (5th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984)). Additionally, in *Cabana,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), the Court stated that "*Enmund* does not concern the guilt or innocence of the defendant—it establishes no new elements of the crime of murder that must be found by the jury." *Cabana,* 474 U.S. at 385, 106 S.Ct. at 696, 88 L.Ed.2d at 715. Rather, the Court continued, *Enmund* concerns only that class of persons who, although guilty of capital murder as defined by state law, may not lawfully be sentenced to death because they did not kill, attempt to kill, or intend to kill. *Cabana,* 474 U.S. at 385, 106 S.Ct. at 696, 88 L.Ed.2d at 716.

The majority holds that the jury's conviction of Ruffin, based on a theory of premeditated murder, satisfies all *Enmund* concerns. To illustrate its point, the majority refers to the trial court's jury instruction which it claims, "instructed the jury that it could not find petitioner guilty of murder unless it found premeditation on his part." *See ante* at 1517. Regrettably, the majority refuses to honor its own reasoning because when the jury instructions are considered as a whole, it is apparent that the jury was instructed not only on premeditated murder, but also instructed on theories of vicarious criminal liability, including aiding and abetting, and the felony murder doctrine. The jury instruction provided:

A person may commit a crime by his own personal act, or through the act or acts of another person. Any person who knowingly aids, abets, counsels, hires, or otherwise procures the commission of a crime, is equally guilty with the one who actually performs the criminal act, whether he is or is not present at the commission of the offense. However, for one person to be guilty of a crime physically committed by another, it is necessary that he have a conscious intent that the criminal act shall be done, and that pursuant to that intent *he do some act or say some word which was intended to and which did incite, encourage, assist, induce, or cause another person to actually commit the crime.* [Emphasis added.]

This instruction allowed the jury to find Ruffin guilty of first degree murder, and to satisfy *Enmund* even if it found: (1) the "crime" (sexual battery or murder?) was committed "through the act or acts of another person;" (2) he was "not present at the commission of the offense;" (3) If not present at the scene of the crime, he "procure[d] the commission of [the] crime"; (4) if he had a "conscious intent that the crimi-

nal act [should] be done" although not present at the crime scene; (5) if not present and participating in the criminal act itself, he "[said] some word ... intended to and which did incite, encourage, assist, induce, or cause another person to actually commit the crime." According to the majority, *Enmund* would be satisfied, through the above quoted jury instruction, if three weeks before the murder, Ruffin had told Hall that the victim should be kidnapped and killed. Imposition of the death penalty under these circumstances is precisely the kind of scenario which the Supreme Court condemned in *Enmund.*

Even more regrettably, the majority has inspected the state court record and focused on an instruction that covers premeditated murder as well as felony murder theories, and mysteriously concludes that the jury convicted on the premeditated murder theory. Why not conclude that the jury convicted on the easier and more probable theory of felony murder? *

Because *Enmund* is a sentencing case and does not determine who may or may not be found guilty of first degree murder, a jury's verdict of guilty is not dispositive

of *Enmund's* concern of whether a defendant may be lawfully sentenced to death because he in fact killed, attempted to kill, or intended to kill. More significantly, in *Cabana,* the Court reiterated that the inquiry into whether *Enmund* bars a death sentence does not end with an examination of the jury instructions: "[r]ather, the court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made." *Cabana,* 474 U.S. at 387, 106 S.Ct. at 697, 88 L.Ed.2d at 717 (footnote omitted). Thus, by focusing exclusively on the jury instructions to determine whether *Enmund* has been satisfied, the majority's disposition of the *Enmund* issue manifests a grave misunderstanding of the Supreme Court's directive in *Cabana.*

In *Cabana,* the Court revisited *Enmund* for the sole purpose of delineating the "appropriate course of action for a federal court faced with an *Enmund* claim when the state courts have failed to make any finding regarding the *Enmund* criteria." *Cabana,* 474 U.S. at 390, 106 S.Ct. at 699,

---

* In addition to the instruction on vicarious criminal liability, the jury was also informed that "[i]f the defendant, in killing the deceased, acted from a premeditated design to effect the death of the deceased, or some other human being, he should be found guilty of murder in the first degree." In this regard, this case comes to us in much the same posture as *Cabana* where, as here, the jury was instructed on several theories of criminal liability. As the Supreme Court observed:

> An instruction offered after the one [on accomplice liability] informed the jury that to find Bullock guilty of capital murder, it must find that he 'did in fact kill Mark Dickson without malice, without authority of law, and not in necessary self defense.' App. 90–91. This instruction does not change our view that the jury's verdict does not necessarily reflect a finding that Bullock killed. The preceding instruction had explicitly informed the jury that it could find Bullock guilty if his accomplice had done the actual killing. The jury could well have concluded, reading the instructions together, that the instruction that Bullock must have 'in fact killed' referred only to a requirement that Bullock have committed acts that rendered him legally accountable for the killing under the previous instruction. Under this reading of the

instructions, the earlier, more specific instruction would be read as defining the legal meaning of the requirement that Bullock must have 'in fact killed.'

> Even if the second instruction is read as simply irreconcilable with the first, however, we cannot conclude that the jury followed the second instruction. As was the case last Term in *Francis v. Franklin,* 471 U.S. 307, 322–23, 105 S.Ct. 1965, 1975, 85 L.Ed.2d 344 (1985), '[n]othing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has *no* way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.' Moreover, to the extent that one can speculate as to which of the instructions the jurors followed in this case, it seems more likely that they would have chosen the [infirm] instruction, which, though somewhat harder to follow, appears to be more comprehensive and more specifically tied to the facts presented to the jury.

*Cabana,* 474 U.S. at 383–84, n. 2, 106 S.Ct. at 695–96, n. 2, 88 L.Ed.2d at 714–15, n. 2 (emphasis added).

88 L.Ed.2d at 719. Although recognizing that federal and state courts are equally competent to make the factual determination of whether a defendant in fact killed, attempted to kill, or intended to kill, the Court concluded that the desirable alternative is to allow the state's judicial system to make this determination in the first instance. *Cabana,* 474 U.S. at 390, 106 S.Ct. at 699, 88 L.Ed.2d at 719. In so holding, the Court reasoned:

> First, to the extent that *Enmund* recognizes that a defendant has a right not to face the death penalty absent a particular factual predicate, it also implies that the State's judicial process leading to the imposition of the death penalty must at *some* point provide for a finding of that factual predicate.... Second, the State itself has a "weighty interest in having valid federal constitutional criteria applied in the administration of its criminal law by its own courts." *Rogers v. Richmond,* 365 U.S. 534, 548, 81 S.Ct. 735, 743, 5 L.Ed.2d 760 (1961).

*Cabana,* 474 U.S. at 390–91, 106 S.Ct. at 699, 88 L.Ed.2d at 719.

Notwithstanding the Court's directive that the State judicial system be given the first opportunity to make the necessary *Enmund* findings, the majority ignores the clear dictates of *Cabana* by refusing to remand this case to the state courts to make the proper *Enmund* findings. While some would argue that the federal habeas court should make the *Enmund* findings since it has the record of the state proceedings, the short answer is: The Supreme Court has held to the contrary. The lesson of *Cabana* is that state courts must incorporate into their procedures for the handling of death penalty cases a method which requires decisionmakers to make the *Enmund* findings expressly.

Accordingly, I would remand this case to the state judicial system in order for it to make the appropriate *Enmund* findings.