KETHLEDGE, J., delivered the opinion of the court, in which BATCHELDER, C.J., joined. BATCHELDER, C.J. (pp. 348-50), delivered a separate concurring opinion. MERRITT, J. (pp. 350-53), delivered a separate dissenting opinion.
OPINION
KETHLEDGE, Circuit Judge.
Sixteen years ago, an Ohio jury convicted Bobby Sheppard of aggravated murder and sentenced him to death. He now asks us to grant him a writ of habeas corpus ordering the state of Ohio to redo the penalty phase of his trial. The district court denied Sheppard’s petition. We affirm.
I.
On August 19, 1994, Sheppard walked into a Cincinnati liquor store wearing a mask and carrying a gun. He was eighteen years old at the time. With him was his fourteen-year-old accomplice, Antwan Little, who had a t-shirt pulled over his head. Sheppard grabbed the store’s owner, Dennis Willhide, and forced him to the ground. Willhide did not resist. Little opened the register, grabbed the cash inside, and ran out the door. Sheppard lingered for a moment, and then fired a single shot into the back of Willhide’s head. The store’s security camera recorded the entire robbery.
Meanwhile, a store employee, Darren Cromwell, escaped out the back door. He eventually managed to call the police. The police brought a tracking dog, who followed the robbers’ scent to Sheppard’s nearby house. They promptly arrested Sheppard and Little. After obtaining a warrant, the police searched the house and found numerous loose bills in a kitchen closet and a black mask under a bed. The next day, the police found the murder weapon and more cash in a bush at the house next door to Sheppard’s.
Immediately after being arrested and read his rights, Sheppard exclaimed that he “didn’t do a robbery.” Later at the police station, however, he admitted that he had gone to the store and shot Willhide. *342 At first, he said he acted in self-defense— Sheppard and Little had tried to buy beer, Willhide pulled out something that Sheppard mistook for a gun, and Sheppard shot him. But Sheppard eventually abandoned that story too and confessed to a version of events similar to the one caught on tape. He insisted that he did not intend to shoot Willhide and that he wasn’t “in [his] right mind” at the time, but also admitted that he shot Willhide because he did not want Willhide to identify him.
Sheppard was charged with aggravated robbery and murder. He pled not guilty. A jury convicted him as charged. During the penalty-phase trial, Sheppard argued that his crime did not warrant the death penalty because he was paranoid schizophrenic, was only eighteen, and had no significant criminal record. The jury thought otherwise, concluding beyond a reasonable doubt that the aggravating circumstances of Sheppard’s crime outweighed any mitigating factors. Thus, the jury recommended the death penalty.
Shortly after reporting that verdict to the court, one of the jurors, Stephen Fox, told a member of the prosecutor’s office that he had consulted an outside source, Dr. Helen Jones, during the penalty phase of the trial. The prosecutor immediately brought the matter to the trial court’s attention. The court and Sheppard’s counsel examined Fox during an in camera hearing. Fox said that he had asked Jones for a brief definition of paranoid schizophrenia, but that her answer had played no role in his deliberations. After hearing Fox testify, the court found that Sheppard had suffered no prejudice from Fox’s misconduct. The court thereafter sentenced Sheppard to death, as the jury had recommended. Sheppard moved for a new trial, but the court denied the motion.
Sheppard appealed, advancing numerous claims under both state and federal law. The Ohio Supreme Court rejected them all. State v. Sheppard, 84 Ohio St.3d 230, 703 N.E.2d 286 (1998). Sheppard also filed a state collateral attack, which was likewise unsuccessful. State v. Sheppard, 91 Ohio St.3d 329, 744 N.E.2d 770 (2001) (per curiam).
Sheppard then filed this federal habeas petition. The district court sent the case to a magistrate judge. Over the objections of the Warden, the magistrate held an evidentiary hearing regarding Sheppard’s juror-misconduct claim. Numerous witnesses testified at that hearing, including Fox, Jones, and Dr. Jeffrey Smalldon, Sheppard’s mental-health expert from his original trial. The district court ultimately concluded that none of Sheppard’s claims merited relief and denied the petition.
This appeal followed.
II.
We review de novo the district court’s denial of Sheppard’s petition. Tibbetts v. Bradshaw, 633 F.3d 436, 441 (6th Cir.2011). Sheppard filed his federal petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so that statute governs his case. See Williams v. Taylor, 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).
A.
Sheppard first claims that we should grant the writ because Fox consulted an outside source — Dr. Helen Jones— about the definition of paranoid schizophrenia during the penalty phase of his trial. Sheppard presented a similar claim to the Ohio Supreme Court, which rejected it. 703 N.E.2d at 291. A threshold question is whether we review that decision under the standards set forth in 28 U.S.C. § 2254(d). That provision says that we may not grant the writ with respect to a *343 claim “adjudicated on the merits” in state court unless the court’s decision was “contrary to, or involved an unreasonable application of, clearly established Federal law” or rested on an “unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Id.
Although Sheppard’s claim was adjudicated on the merits in state court, he argues that § 2254(d) does not apply here because he has presented new evidence in support of his claim. In state court, the relevant evidence comprised Fox’s testimony during the in camera hearing before the trial judge and two affidavits obtained from Jones shortly thereafter. Based on that record, the Ohio courts found that what Jones had told Fox did not influence him and was consistent with the evidence Sheppard presented at trial. Sheppard now contends that he disproved these points at the federal evidentiary hearing. There, Jones testified that she told Fox that schizophrenics were “out of touch with reality” and that the disease was a “communication disorder.” According to the testimony of Sheppard’s expert, Smalldon, those statements were wrong. And Fox himself, after extensive cross-examination, finally said that he was “influenced” by Jones’s explanation. Because none of this testimony was presented to the Ohio courts, Sheppard argues that we should review his claim de novo rather than under the more deferential standards set forth in § 2254(d).
Sheppard’s argument assumes that his new evidence was properly presented under § 2254(e)(2). That section provides in relevant part:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
Id. This provision “imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing.” Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 1400-01, 179 L.Ed.2d 557 (2011). As interpreted by the Supreme Court, a petitioner who was not diligent in developing the factual basis of his claim cannot obtain a federal evidentiary hearing with respect to that claim unless he meets the conditions set forth in § 2254(e)(2)(B). See Williams, 529 U.S. at 437, 120 S.Ct. 1479. Sheppard does not contend he can meet those conditions, so the question whether his federal evidentiary hearing was permissible under AEDPA depends on whether he was diligent in developing the factual basis for his claim in state court.
He plainly was not. To be diligent, a petitioner must make “a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.” Id. at 435, 120 S.Ct. 1479. Sheppard did not do that here. All of the witnesses he presented in the federal evidentiary hearing were available to Sheppard when his case was still pending in the state trial court seven years before. Fox actually testified then, as noted above; Smalldon was Sheppard’s own expert witness; and that Sheppard obtained an affidavit from Jones after the in camera hearing and presented it to the trial court shows that she too was available to testify. That Sheppard lacked subpoena power over these witnesses does not matter, since they were plainly willing to testify without compulsion. In short, Sheppard did virtually nothing to present *344 to the Ohio courts the evidence he presented to the federal courts seven years later.
“[F]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.” Pinholster, 131 S.Ct. at 1401. That is precisely the situation we have here. The testimony in Sheppard’s federal evidentiary hearing was taken in violation of § 2254(e)(2). We therefore will not consider it. And we further note — contrary to a second assumption underlying Sheppard’s argument — that there is no reason to think that testimony given seven years after the relevant events is necessarily more accurate or truthful than testimony given promptly after those events.
 We turn to the merits of Sheppard’s juror-misconduct claim. Under § 2254(d)(1), we may grant .the writ if the Ohio Supreme Court’s rejection of this claim was contrary to clearly established Supreme Court precedent. Sheppard presents two arguments as to why it was. First, Sheppard faults the court for not applying the objective standard for juror-misconduct claims that we set out in Gall v. Parker, 231 F.3d 265 (6th Cir.2000). That standard asks whether “a reasonable juror would likely have considered” the extraneous evidence. Id. at 335. But that standard was not Supreme Court precedent at the time of Sheppard’s direct appeal, nor had this circuit yet announced that standard. That means we cannot grant the writ based on the Ohio Supreme Court’s failure to apply it. See Pinholster, 131 S.Ct. at 1399. Instead, at the time of the court’s decision, this circuit applied four principles for adjudicating juror-misconduct claims. Those principles were: “ ‘(1) when a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the [hearing] is not inherently suspect.’ ” United States v. Walker, 1 F.3d 423, 431 (6th Cir.1993) (quoting United States v. Zelinka, 862 F.2d 92, 95-96 (6th Cir.1988)). The Ohio Supreme Court cited and applied all of those principles correctly here. So we cannot grant relief based on Sheppard’s first argument in support of this claim.
His second argument is based on the Ohio Supreme Court’s observation that, “[u]nder [Ohio] Crim.R. 33(A)(2), juror misconduct must materially affect an accused’s substantial rights to justify a new trial.” 703 N.E.2d at 290. But that is merely a statement of the state-law standard for a juror-misconduct claim; and since Sheppard asserted this claim under both state and federal law, the court was entitled to cite both state and federal law in its opinion. Thus, Sheppard is not entitled to relief under § 2254(d)(1).
Section 2254(d)(2) provides that we may grant the writ if the Ohio Supreme Court’s decision “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Sheppard apparently concedes that the Ohio court’s decision was reasonable based on the state-court record, arguing instead that it was unreasonable in light of the evidence presented in the federal proceeding. That argument is contrary to the plain text of (d)(2), which looks only to the evidence presented in the state-court proceeding. See Pinholster, 131 S.Ct. at 1400 n. 7. And, as already explained, we cannot consider the federal-hearing evidence at all. Sheppard is not entitled to relief on his juror-misconduct claim.
B.
Sheppard next claims that the state court violated due process during the pen *345 alty phase of his trial by excluding evidence regarding his family’s history of mental illness. Sheppard sought to introduce medical records for his mother and his Uncle Darryl. The trial court admitted approximately two pages of records for each relative, which summarized their respective medical conditions. The court excluded the remainder of the records. Sheppard now argues that the excluded records were relevant to his mitigation argument, and that he had a constitutional right to present them to the jury.
Although Sheppard included this claim in his brief to the Ohio Supreme Court, the court’s opinion did not specifically address it. Sheppard says that means we review the claim de novo. But the Ohio court expressly stated that it was only addressing the “issues that warrant discussion” and “summarily rejecting]” the rest. 703 N.E.2d at 290. This claim was among the rest; and “[w]here a state court’s decision is unaccompanied by an explanation, the habeas petitioner’s burden still must be met by showing there was no reasonable basis for the state court to deny relief.” See Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011). So that is the showing Sheppard must make here.
The excluded records for Sheppard’s mother merely show that she was obese and depressed, neither of which was a relevant mitigating fact. Moreover, the excluded records are virtually identical to the records that were admitted. The exclusion did not violate due process.
Darryl’s medical records were relevant, since they show that he suffered from paranoid schizophrenia. That condition has a genetic component, so the fact that Sheppard’s uncle was schizophrenic makes it somewhat more likely that Sheppard is too.
But that does not mean we can grant his petition. The admitted portion of Darryl’s medical records plainly indicated that he suffered from chronic paranoid schizophrenia, including auditory and visual hallucinations. Moreover, Smalldon testified extensively regarding Darryl’s schizophrenia. Thus, the jury was fully aware that Sheppard’s uncle had the condition that Sheppard himself claimed to have.
What the excluded records did say was that Darryl had some violent episodes while in prison. Unlike his proofs with respect to schizophrenia itself, however, Sheppard presented zero scientific evidence that a propensity for violence has some genetic component. Thus, on the record before the state trial court, the excluded records of Darryl’s violence were irrelevant to the issues presented in the penalty phase of Sheppard’s trial.
Sheppard also contends that the excluded records could have rebutted the prosecution’s cross-examination of Smalldon. But the prosecution never denied Darryl’s schizophrenia. Instead, the prosecution challenged Smalldon for relying on anecdotal accounts, provided by Sheppard’s mother, of other relatives’ mental problems. The prosecution merely pointed out that those accounts may have been unreliable. The excluded records would not have defeated that challenge.
Thus, the excluded records were cumulative regarding Darryl’s schizophrenia and irrelevant regarding Darryl’s violence. Sheppard contends that he had a right to admit them nonetheless, citing the Supreme Court’s decisions in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), and Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004). Tennard is inapposite here because it was decided after the Ohio Supreme Court decision in this case. See Pinholster, 131 S.Ct. at 1399. And we do *346 not think the other two cases should be so broadly read. In Eddings, the Court held that a sentencing judge cannot categorically refuse to consider a capital defendant’s background and upbringing; and in Green, the Court held that a capital defendant cannot be barred from presenting his alibi evidence to a sentencing jury. Both of these cases concerned the exclusion of an entire category of relevant mitigating evidence. They do not impose on state courts a constitutional imperative to admit cumulative or irrelevant evidence. (Neither does Tennard, for that matter.) And that is what the state court excluded here. This claim too is meritless.
C.
Sheppard next claims that he is entitled to relief because the prosecutor engaged in “widespread” misconduct during the penalty phase of his trial. Specifically, Sheppard says that the prosecutor improperly criticized Sheppard’s choice not to testify, personally disparaged Sheppard’s mental-health expert, and encouraged jurors to make their own diagnosis of Sheppard’s mental condition from the surveillance video.
The Ohio Supreme Court characterized the prosecutor’s comments as “troublesome.” 703 N.E.2d at 294. We have no quarrel with that characterization; but what is more important is that the Ohio Supreme Court independently determined whether the aggravating factors in Sheppard’s case outweighed the mitigating ones beyond a reasonable doubt. It concluded that they did, and thus affirmed his sentence. See id. at 296.
As Sheppard himself concedes, this reweighing of the relevant factors, if properly done, cures any prosecutorial misconduct. See generally Lundgren v. Mitchell, 440 F.3d 754, 783 (6th Cir.2006). Sheppard says that the reweighing was improper here. Specifically, he argues that the court assigned insufficient weight to his youth, which he says was contrary to Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Under Eddings, in considering whether to impose a death sentence, a court cannot “refuse to consider, as a matter of law, any relevant mitigating evidence”; but the court can find such evidence “wanting as a matter of fact” and discount it accordingly. See 455 U.S. at 114, 102 S.Ct. 869 (emphasis in original).
Here, the Ohio Supreme Court determined that Sheppard’s age — eighteen at the time of the crime — offered “little mitigation” because he was a “man of full legal age” and an “adult with all the privileges and responsibilities of an adult.” Sheppard, 703 N.E.2d at 296. That is not a refusal to consider Sheppard’s youth “as a matter of law”; it is a decision on how to weigh the factor.
Sheppard contends that it was unreasonable for the court to assign “little” weight to his youth, since he could not have been any younger and still be eligible for the death penalty. But this contention assumes that, for purposes of this factor, youth must be measured strictly by chronological age. The Ohio courts see the factor as more complicated than that. See, e.g., State v. Slagle, 65 Ohio St.3d 597, 605 N.E.2d 916, 931 (1992) (collecting cases). That is their prerogative; and that is what the Ohio courts did here. In explaining the grounds for Sheppard’s sentence, the trial court noted that he was “certainly not a typical 18 year old” because he had abused drugs, dropped out of school, and planned the robbery and murder for which he was convicted. The Ohio Supreme Court apparently agreed. None of this reasoning is contrary to Eddings.
To the extent that Sheppard is complaining about the brevity of the court’s discussion of his youth, the U.S. Supreme *347 Court has made clear that Sheppard still must show that the state court’s bottom-line determination — here, that Sheppard’s youth did not preclude a death sentence— was contrary to clearly established federal law. See Richter, 131 S.Ct. at 784. Sheppard has not made that showing. The Ohio Supreme Court’s reweighing cured whatever misconduct the prosecutor engaged in at trial.
D.
Sheppard next claims that the trial court improperly excused a prospective juror, Joyce Wells. As an initial matter, the Warden contends that Sheppard defaulted this claim by presenting only a state-law version of it to the Ohio Supreme Court. In his brief to that court, however, Sheppard said, “[t]he trial court erred in imposing the death sentence because the jury that convicted the appellant and recommended the death sentence was improperly constituted in violation of appellant’s right to a fair trial under the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States[.]” That reference was enough to avoid default, so we proceed to the merits. See West v. Bell, 550 F.3d 542, 557-58 (6th Cir.2008).
A trial court may exclude a juror for cause if her views on capital punishment would prevent or substantially impair the performance of her duties as a juror in accordance with her instructions and her oath. Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Sheppard contends that Wells displayed no such impairment during voir dire, so the trial court violated his right to an impartial jury by excluding her. For good reasons, however, we defer to the trial judge’s view unless it is “not fairly supported by the record as a whole.” Gall, 231 F.3d at 330. Moreover, since the Ohio Supreme Court summarily rejected this claim as well, AEDPA imposes a second layer of deference here. See § 2254(d)(1); Richter, 131 S.Ct. at 784.
The Warden does not need that extra deference to prevail. Wells said repeatedly that she could not impose the death penalty upon a defendant who repented of his crime. As a result, the trial judge concluded that she had “set in advance the standards by which she would refuse to impose the death penalty.” Sheppard asserts that this conclusion was wrong because Wells eventually said that, “[i]f one of [the mitigating factors] would be remorse or not, then I could deal with it in that way.” The trial court reasonably interpreted that answer to mean that Wells would still treat repentance, standing alone, as outcome determinative, rather than as one factor in the balancing process that Ohio law requires. We have no basis to disturb the trial court’s first-hand judgment on this point.
E.
Sheppard next argues that we should consider several claims that he failed to raise on direct appeal. Sheppard must show cause and prejudice as to these claims because they are proeedurally defaulted. See Lundgren, 440 F.3d at 763. Some of these claims relate to additional comments that the prosecutor made during the penalty phase; but Sheppard cannot prove prejudice as to those claims in light of the Ohio Supreme Court’s reweighing. So these claims fail.
Another omitted claim was that the trial court erroneously excluded certain testimony from his mother and social worker. But Sheppard cannot show prejudice as to this claim either. The two witnesses would have told the jury that Sheppard did not deserve the death penalty, that he did not intend to kill Willhide, and that it was unfair to sentence Sheppard to *348 death when his accomplice, Little, only received seven years in prison. But the testimony these witnesses did give at trial made clear to the jury that they did not think Sheppai-d should receive the death penalty; and the jury was otherwise fully aware of what Little’s sentence was. There is no reason to think that the jury would have changed course based on the excluded testimony.
Sheppard next argues that his counsel on direct appeal was constitutionally inadequate for failing to raise these claims. He previously raised this claim in his state collateral attack, and the Ohio Supreme Court rejected it. 744 N.E.2d 770. The court discussed the relevant Strickland standard, and held that Sheppard had not met it. See id. at 771. For the reasons stated above, that decision was not unreasonable.
F.
Sheppard also argues that the jury instruction during the penalty phase of his trial was contrary to Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The Supreme Court recently upheld a similar jury instruction to the one given here and in doing so confirmed that Beck does not apply to penalty instructions. See Bobby v. Mitts, — U.S.-, 131 S.Ct. 1762, 179 L.Ed.2d 819 (2011). So this claim is meritless.
G.
Finally, Sheppard argues that the cumulative effect of these errors rendered his trial fundamentally unfair. Post-AED-PA, that claim is not cognizable. See Moore v. Parker, 425 F.3d 250, 256 (6th Cir.2005).
* * 4*
The district court’s judgment is affirmed.