MERRITT, Circuit Judge,
dissenting.
DISSENT
There are glaring fundamental, federal constitutional violations in this death penalty case. My colleagues must have tongue-in-cheek when they conclude simply that “Sheppard is not entitled to reliti-gate his case yet again.” The fact is that Sheppard has not had an opportunity in federal court to ever “litigate” the merits of his Sixth and Eighth Amendment issues at all. The court has refused at each step to reach the merits of any constitutional issue and has avoided litigating the main points of Sheppard’s case. Procedural default has been used improperly once again to suspend the writ of habeas corpus in a criminal case — here a capital case — in violation of Article I, section 9 (“The Privilege of the Writ of Habeas Corpus shall not be suspended” except in cases of “Rebellion or Invasion.”).
In this death penalty case, there are four separate issues that must be discussed: First, whether there are Sixth and Eighth Amendment violations regarding the right to confrontation and to an impartial jury, as well as the right to a fair sentencing hearing in mitigation of the death penalty. Second, whether these constitutional violations are procedurally defaulted and may not be considered in federal court because Sheppard did not pursue them diligently in state court. Third, whether the court’s “defective counsel” basis for avoiding a ruling on the merits of the constitutional violation is itself an independent basis for issuing the writ because of ineffective . counsel. Fourth, whether, alternatively, two recent Supreme Court opinions, Martinez v. Ryan, 132 S.Ct. 1309, and Trevino v. Thaler, 133 S.Ct. 1911 (2013), allow Sheppard to overcome the procedural default of the ineffective-assistance-of-trial-counsel issue that my colleagues in the majority characterize as a noncognizable “second or successive petition,” and not “extraordinary” enough to warrant relief. I will discuss these issues in order because the first two issues provide the necessary background information for the last two issues.
I. Juror Misconduct Resulted in Sixth and Eighth Amendment Violations
The court vastly understates the effect Dr. Helen Jones’ telephone conversation had on juror Fox’s mind set and discussions during jury deliberations. At the federal evidentiary hearing, Fox reversed his previous state court testimony that the conversation had no effect on his vote. Retracting that state court testimony in federal court, he said that it “must have” contributed to the verdict. Trans, of Fed. Evid. Hr’g, June 24, 2002, at 136-37. Based on his testimony in federal court, no reasonable person can now deny that what Jones told him during jury deliberations influenced his position and his vote in favor of the death penalty.
*823 Not only does the case present a clear violation of the “confrontation” and “impartial jury” provisions of the Sixth Amendment (“the accused shall enjoy the right to ... an impartial jury [and] ... to be confronted with the witnesses against him....”), but it injected false extrajudicial information into the trial. That false information undermined Dr. Smalldon’s persuasive testimony in the mitigation phase of the case and denied Sheppard a proper sentencing hearing. A properly bifurcated sentencing hearing is required under the Sixth Amendment. Gregg v. Georgia, 428 U.S. 153, 190-93, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (adopted from the Model Penal Code). Extra-judicial information that negates a capital defendant’s mitigation evidence of mental illness violates the Eighth Amendment cruel and unusual punishment provision, which requires a decision that fully considers such mitigating circumstances. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
The court’s answer to Sheppard’s argument that the Fox-Jones conversation clearly violated his Sixth and Eighth Amendment rights is simply a conclusory statement that the court will not consider it because his counsel was “plainly” not diligent in developing the factual basis for his claim in state court, thereby precluding further investigation and review in federal court. Sheppard v. Bagley, 657 F.3d 338, 343 (6th Cir.2011). This is the court’s first mistake.
The court does not even mention that the state trial court did not permit counsel to further develop the record in state court after the initial motion for a new trial in which Fox and Jones gave the evidence that they later retracted in federal court. The record is clear that shortly after the jury’s death verdict, an assistant district attorney in Hamilton County, Ohio, told state trial Judge Crush that juror Fox, a neighbor, told her at a party over the weekend that he had called Jones, whom he believed to be a psychologist. He said this occurred during jury deliberations and that he had a conversation about Sheppard’s mitigation defense. Recognizing that this conversation was highly improper, she advised Judge Crush. The jury had returned its death verdict the week before. Judge Crush had an informal hearing in his chambers with counsel for the parties in which juror Fox was apologetic for violating Judge Crush’s instruction to the jury against discussing the case with others. At that time juror Fox did not want to tell the judge that the conversation influenced his view of the case. He said it had “no effect” and that he had already made up his mind before he talked to Jones. After a brief discussion, Judge Crush immediately ruled that he would not upset the death verdict because the improper telephone conversation was “harmless error.” They did not discuss the Sixth and Eighth Amendment principles and case law that this extra-judicial conversation violated.
During the in-chambers hearing, Judge Crush questioned juror Fox about his call to Helen Jones. After asking Fox a few questions, Judge Crush quickly declared himself “satisfied” that the improper conduct by Fox had not prejudiced Sheppard’s right to a fair trial. Tr. Trans, of May 30, 1995 (proceeding in chambers), at 1255. Sheppard’s counsel then followed up with a few questions and informed Judge Crush that Sheppard would move for a new trial in light of the extra-judicial contact. In response, the prosecutor asked the trial court to put down an order stating that there could be no contact with any jurors *824 without specific prior permission of the court. Sheppard’s counsel stated that he thought such an order was inappropriate and that he was entitled to contact the jurors. Judge Crush said he had already told the jurors that they did not need to talk to anyone about the case and he intended “to keep these jurors from being pestered with that,” and went on to opine that “the public defender’s office is almost religious in their opposition to the death penalty. People under the influence of such conviction do not always use good sense. I am just worried about harassing the jurors.” Id. at 1261-62. The prosecutor then suggested that jurors only be allowed to testify under oath in open court because affidavits “lead[ ] to confusion amongst jurors and witnesses.” Id. at 1268. Sheppard’s counsel objected to any such “prior restraint” that would prohibit speaking with the jurors. Judge Crush then agreed that the jurors could be contacted by defense counsel but only so long as the prosecutor received advance notice and was present and allowed to question them as well. Sheppard’s counsel could not conduct an independent investigation of the jurors. Judge Crush went on to explain that jurors can be “manipulated,” and “[l]ots of problems com[e] from questioning jurors,” so he “encourage[s jurors] not to [speak with counsel] because your [sic] statements can be misconstrued.” Id. at 1264-65.
Although Judge Crush reacted negatively to defense counsel’s request to speak with jurors, he did not foreclose Sheppard’s counsel from interviewing Helen Jones. After the initial hearing in chambers, counsel interviewed Jones and received a brief affidavit stating that she received a phone call from Fox “asking me for information about paranoid schizophrenia. I gave Mr. Fox a brief description and explanation of paranoid schizophrenia.” Affidavit of Helen Jones in Support of Motion for New Trial (Aug. 29, 1995). The prosecutor received a more extensive affidavit from Jones stating falsely that she “thoroughly reviewed the transcript of Doctor Jeffrey Smalldon” and “[t]he brief explanation I gave Mr. Fox of paranoid schizophrenia was totally consistent with the testimony of Dr. Smalldon.... [Nothing I told [Fox] contradicted anything testified to by Dr. Jeffrey Smalldon.” Affidavit of Helen Jones in Response to Motion for New Trial (Oct. 1, 1995). Judge Crush denied the motion based on Jones’ affidavits and Fox’s statement at the hearing in chambers that his extra-judicial conversation with Jones had no effect on his vote for the death penalty. State v. Sheppard, No. B9405527, Entry Overruling Motion for New Trial (Oct. 10, 1995). Judge Crush refused to set the death penalty aside and grant a new trial of the sentencing phase of the case. The Ohio Court of Appeals and Supreme Court simply affirmed the harmless error ruling.
It is undisputed that the Fox-Jones conversation interfered with the jury’s deliberations about the mitigating effect of Sheppard’s paranoid schizophrenia on his culpability for the death penalty. Dr. Smalldon, an expert, board-certified, experienced psychologist, testified at length during the penalty phase of the trial. He testified about his observations during numerous interactions with Sheppard over an eight-month period that included many psychological and neuropsychological evaluations and tests. Dr. Smalldon also examined Sheppard’s medical and school records and interviewed family members. Dr. Smalldon testified that many family members told him that Sheppard’s behavior changed dramatically beginning in the fall of 1993 when Sheppard was 17 years old. Sheppard sustained a head injury in a car accident in September 1993, which could have triggered the onset of Shep *825 pard’s paranoid schizophrenia. Dr. Small-don also testified that the most common time for onset of paranoid schizophrenia is the late teens and early twenties. Tr. Trans, of May 16, 1995, at 1075. In addition, Dr. Smalldon testified that Sheppard had an extensive family history of mental illness on his mother’s side, including paranoid schizophrenia. Id. at 1056.
Dr. Smalldon testified that the results from all of his testing point clearly to paranoid schizophrenia. His testimony is persuasive. He had “no question about his diagnosis.” Id. at 1088, 1130. Dr. Small-don’s testimony was clear that Sheppard’s illness “substantially impaired his ability to conform his conduct to the law because of his radically compromised insight [and] judgment....” Id. at 1123. That is the mitigating evidence the Fox-Jones conversation undermined.
Sheppard was only eighteen years and two months old when the murder oe-curred-only two months past the age of “diminished culpability” that makes an adolescent ineligible for the death penalty under the Supreme Court’s opinion in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In dicta, the Court elaborated that these reasons “do not disappear when the individual turns 18.” Id. at 574, 125 S.Ct. 1183.
II. The Court’s Ineffective Assistance of Counsel Decision
When Sheppard’s counsel attempted to pursue and reassert the constitutional claims in the first and second state habeas corpus proceedings based on the Fox-Jones extra-judicial conversation, Judge Crush ruled against Sheppard on grounds of “res judicata” and the Ohio appellate courts refused to disturb earlier rulings of “harmless error.” Sheppard was, therefore, foreclosed by “res judicata” from pursuing the issue until he filed his federal habeas petition. Counsel was then allowed to depose Fox and Jones and call them as witnesses. It was only then that Sheppard’s counsel could examine the witnesses and only then that they retracted and reversed their earlier testimony. I am, therefore, unable to find a factual basis that would amount to professional dereliction of duty and ineffective assistance of counsel. I dissented from our court’s earlier ruling concerning counsel’s performance. Sheppard, 657 F.3d at 350. My colleagues held, based on counsel’s access to Fox and Jones in the state proceedings, that the retraction of their earlier “harmless error” statements in the state court should have been presented to the state court despite the negativity of Judge Crush’s instructions and the state law bar of “res judicatal”
Although I am not convinced of our court’s previous holding that counsel performed below normal professional standards, there can be no doubt that that was its holding. Sheppard, 657 F.3d at 343-44. That was the first and only time that any court has made such a ruling in this case. So the next question becomes: If the court believes Sheppard’s counsel was ineffective and simply failed to discover and present retractions by Fox and Jones of their earlier statements in state court, why should not the writ issue on this ground? Why would it not entitle Sheppard to a new trial on the validity of his mental illness claim— the claim that Fox and Jones in their extra-judicial conversation undermined and the conversation that Fox now concedes led to his vote for the death penalty and the position he took during his discussion with other jurors during their deliberations? It makes no sense for the court to regard its own previous definitive ruling that Sheppard’s counsel was derelict as now constituting a “second or successive” petition barred by 28 U.S.C. § 2244(b). It *826 is a ruling of this court that the court is unwilling to overturn or retract. It stands as the law of the case.
III. “Defective Counsel ” Itself Basis for Writ
Neither Gonzalez v. Crosby, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), nor any other case indicates that a federal court’s own prior holding in the same case of ineffective assistance of counsel or other constitutional error may be proeedurally defaulted as a “second or successive” petition. Gonzalez is simply irrelevant. It is about tolling the statute of limitations in a habeas case, and no federal court had made a finding of a constitutional violation in the case. In the case at bar this court found counsel’s performance deficient. Sheppard then moved under Rule 60(b) that this court had ruled that counsel was derelict and that the consequences of derelict counsel should be the issuance of the writ as to the mitigation phase of the trial.
The court wants once again to find a way to avoid the merits of the constitutional violations — first the Sixth and Eighth Amendment violations and now a Sixth Amendment violation of the right to counsel. But the court itself has made a clear Sixth Amendment ruling of ineffective counsel in its effort to avoid ruling on the merits of the Fox-Jones juror misconduct violation. The court cannot have it both ways. Its earlier ruling is completely inconsistent with its present ruling that ineffective counsel may not now be considered.
IY. Procedural Default Should Be Excused under Martinez v. Ryan, 132 S.Ct. 1309, 182 L.Ed.2d 272 and Trevino v. Thaler, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013)
If we accept arguendo the court’s assertion that Sheppard’s ineffective assistance of counsel claim is barred as a “successive petition,” Trevino v. Thaler provides an alternative, independent basis for preserving Sheppard’s right to have the court decide the ineffective assistance claim on the merits.
Sheppard made a claim in his federal habeas petition that his trial counsel was ineffective in the motion-for-new-trial proceedings for failing to present evidence of prejudice to overcome Judge Crush’s finding of harmless error. The claim was held to be proeedurally defaulted in the federal habeas proceeding because the same claim was not raised at the first opportunity in state court by Sheppard’s state post-conviction counsel in Sheppard’s first state post-conviction petition. After the Supreme Court decided Martinez, Sheppard again raised the ineffective assistance of trial counsel claim in a motion under Rule 60(b). Martinez and the later case of Trevino excuse the previously-found federal habeas procedural default caused by state post-conviction counsel’s failure to raise ineffective assistance of trial counsel in the first state post-conviction proceeding. Although the court says that Sheppard’s claim for relief under Rule 60(b) filed after the Supreme Court’s holding in Martinez is a “second or successive habeas petition,” Sheppard’s claim for relief under Rule 60(b) cannot be a “second or successive habeas petition” because he is not asking to relitigate a claim already decided on the merits in the federal habeas proceeding. Instead he is asking that the federal court’s holding that the ineffective assistance of trial counsel claim that was found to be proeedurally defaulted due to the failure to raise it in state post-conviction proceedings be excused under the new rule announced in Martinez and Trevino. If the earlier finding of procedural default is now excused by Martinez and Trevino, Sheppard would be entitled to a full hear *827 ing on the merits of his ineffective assistance of trial counsel claim. Such a hearing might well lead to a finding that the court’s own finding of defective counsel was correct. Therefore, the writ would issue requiring a new trial of the state sentencing hearing.
Y. Conclusion
The court clearly wants to avoid issuing the writ of habeas corpus that would require a new trial at the sentencing phase of the case. But procedural maneuvering is the only way the court can contrive to avoid reaching the merits of either the constitutional issue regarding jury misconduct that undermined Sheppard’s mitigation defense or the constitutional issue regarding the right to effective counsel. In order to avoid issuing the writ by avoiding the merits of the main constitutional issues, it became necessary for the court first to hold that counsel was not diligent but was derelict and ineffective. Only by invoking procedural default in this way could the court then disregard the testimony at the federal evidentiary hearing that the juror based his vote for death on his extra-judicial conversation with an outside “expert” witness, an egregious violation of the Sixth Amendment Confrontation Clause. But ironically this holding of defective counsel gave rise to a further constitutional claim of ineffective assistance of counsel under the Sixth Amendment.
Having specifically found defective representation, the court then holds that its original procedural finding concerning representation, when repeated as a constitutional violation, has now somehow become a “second or successive petition” requiring the court again to avoid reaching the merits. Everything, including irony itself, has now become a casualty of procedural default. Despite all of the constitutional violations — the Sixth Amendment confrontation and impartial jury violations, the Eighth Amendment mitigation violation based on the jury’s misunderstanding of paranoid schizophrenia and the Sixth Amendment ineffective counsel violation-the court has managed to avoid reaching the merits of any constitutional claim.