# HITCHCOCK *v.* DUGGER, FLORIDA DEPARTMENT OF CORRECTIONS

No. 85–6756.   Argued October 15, 1986—Decided April 22, 1987

SCALIA, J., delivered the opinion for a unanimous Court.

*Craig S. Barnard* argued the cause for petitioner.   With him on the. briefs were *Richard L. Jorandby* and *Richard H. Burr III.*

*Sean Daly,* Assistant Attorney General of Florida, argued the cause for respondent.   With him on the brief were *Jim Smith,* Attorney General, and *Richard Prospect,* Assistant Attorney General.*

---

*\*Ira Reiner, Harry B. Sondheim, John K. Van de Kamp,* Attorney General of California, *Michael C. Wellington,* Supervising Deputy Attorney General, and *Susan Lee Frierson,* Deputy Attorney General, filed a brief for the State of California et al. as *amici curiae* urging affirmance.

JUSTICE SCALIA delivered the opinion of the Court.

We have held that in capital cases, "'the sentencer'" may not refuse to consider or "'be precluded from considering'" any relevant mitigating evidence. *Skipper* v. *South Carolina*, 476 U. S. 1, 4 (1986) (quoting *Eddings* v. *Oklahoma*, 455 U. S. 104, 114 (1982)). See also *Lockett* v. *Ohio*, 438 U. S. 586, 604 (1978) (plurality opinion). Certiorari was granted in the present case to consider petitioner's contention that he was sentenced to death under a Florida statute that operated in a manner inconsistent with this requirement.[1] 476 U. S. 1168 (1986).

I

On July 31, 1976, 13-year-old Cynthia Driggers was strangled to death. At the time of the murder, both Cynthia and petitioner resided with Richard Hitchcock, who was Cynthia's stepfather and petitioner's brother. Petitioner initially confessed to the murder, stating that he had killed Cynthia after she threatened to tell her parents that she and petitioner had engaged in consensual sexual intercourse. At his trial for first-degree murder, however, petitioner recanted and testified that it was his brother Richard who murdered Cynthia, after finding out about the intercourse. The State contended that petitioner had sexually assaulted Cynthia and then murdered her to avoid discovery.

Petitioner was convicted of first-degree murder and sentenced to death. After unsuccessful appeals and state and federal collateral proceedings, he filed an application for a writ of habeas corpus in the United States District Court for the Middle District of Florida. He argued, among other

---

[1] Certiorari was also granted on petitioner's claim that the Florida death penalty statute discriminates against capital defendants who murder whites and against black capital defendants, in violation of the Eighth and Fourteenth Amendments. Because we hold petitioner's death sentence invalid on other grounds, we decline to reach this claim. We today decide a similar challenge to the Georgia death penalty statute. See *McCleskey* v. *Kemp, ante,* p. 279.

things, that the advisory jury and sentencing judge had been precluded by law from considering certain evidence of mitigating circumstances that had been introduced, and that additional evidence of mitigating circumstances had been withheld by his counsel in the reasonable belief that it could not be considered under the Florida death penalty statute. The District Court denied petitioner's application, without granting an evidentiary hearing. A panel of the Eleventh Circuit affirmed, 745 F. 2d 1332 (1984), and the Eleventh Circuit affirmed en banc, 770 F. 2d 1514 (1985). This petition followed.

## II

Petitioner claims that the advisory jury and the sentencing judge were precluded by law from considering some of the evidence of mitigating circumstances before them. The Florida death penalty statute in effect at the time (which has since been amended in various respects) provided for separate postconviction proceedings to determine whether those convicted of capital felonies should be sentenced to death or to life imprisonment. Those proceedings were typically held before the trial jury, which heard evidence "as to any matter that the court deem[ed] relevant to sentence." Fla. Stat. § 921.141(1) (1975). After hearing that evidence, the jury was to render an advisory verdict by determining "(a) [w]hether sufficient aggravating circumstances exist as enumerated in [§ 921.141(5)];[2] (b) [w]hether sufficient miti-

---

[2] Section 921.141(5) provided that the aggravating circumstances "shall be limited to the following": that the crime was committed while the defendant was under sentence of imprisonment; that the defendant had previously been convicted of a felony involving the use or threat of violence; that the defendant knowingly created a great risk of death to many persons; that the crime was committed while the defendant was involved in the commission of specified other felonies; that the crime was committed for the purpose of avoiding arrest or escaping from custody; that the crime was committed for pecuniary gain; that the crime was intended to disrupt the government or the enforcement of the laws; and that the crime was especially heinous, atrocious, or cruel.

gating circumstances exist as enumerated in [§ 921.141(6)],[3] which outweigh the aggravating circumstances found to exist; and (c) [b]ased on these considerations, whether the defendant should be sentenced to life [imprisonment] or death." § 921.141(2). The trial court then was to weigh the aggravating and mitigating circumstances itself and enter a sentence of life imprisonment or death. If it imposed a sentence of death, it was required to set forth in writing its findings "(a) [t]hat sufficient aggravating circumstances exist as enumerated in [§ 921.141(5)], and (b) [t]hat there are insufficient mitigating circumstances, as enumerated in [§ 921.141(6)], to outweigh the aggravating circumstances." § 921.141(3).

Petitioner argues that, at the time he was sentenced, these provisions had been authoritatively interpreted by the Florida Supreme Court to prohibit the sentencing jury and judge from considering mitigating circumstances not specifically enumerated in the statute. See, *e. g., Cooper* v. *State,* 336 So. 2d 1133, 1139 (1976) ("The sole issue in a sentencing hearing under Section 921.141, Florida Statutes (1975), is to examine in each case the itemized aggravating and mitigating circumstances. Evidence concerning other matters have *[sic]* no place in that proceeding . . ."), cert. denied, 431 U. S. 925 (1977). Respondent contends that petitioner has misconstrued *Cooper,* pointing to the Florida Supreme Court's subsequent decision in *Songer* v. *State,* 365 So. 2d 696 (1978) *(per curiam),* which expressed the view that *Cooper*

---

[3] Section 921.141(6) provided that the mitigating circumstances "shall be the following": that the defendant had no significant history of prior criminal activity; that the crime was committed while the defendant was under the influence of extreme mental or emotional disturbance; that the victim participated in or consented to the crime; that defendant was merely an accomplice whose participation in the crime was relatively minor; that the defendant acted under duress or domination; that the capacity of the defendant to appreciate the criminality of his conduct or to conform that conduct to the requirements of law was substantially impaired; and the age of the defendant at the time of the crime.

had not prohibited sentencers from considering mitigating circumstances not enumerated in the statute. Because our examination of the sentencing proceedings actually conducted in this case convinces us that the sentencing judge assumed such a prohibition and instructed the jury accordingly, we need not reach the question whether that was in fact the requirement of Florida law. We do note, however, that other Florida judges conducting sentencing proceedings during roughly the same period believed that Florida law precluded consideration of nonstatutory mitigating circumstances. At least three death sentences have been overturned for this reason. See *Songer* v. *Wainwright,* 769 F. 2d 1488 (CA11 1985) (en banc) *(per curiam),* cert. pending, No. 85–567; *Lucas* v. *State,* 490 So. 2d 943, 946 (Fla. 1986); *Harvard* v. *State,* 486 So. 2d 537 (Fla.) *(per curiam),* cert. denied, 479 U. S. 863 (1986). We also note that the Florida Legislature has since removed the phrase "as enumerated [in the statutory list]" from the provisions requiring the advisory jury and the sentencing judge to consider mitigating circumstances. See Fla. Stat. §§ 921.141(2)(b), (3)(b) (1985).

In the sentencing phase of this case, petitioner's counsel introduced before the advisory jury evidence that as a child petitioner had the habit of inhaling gasoline fumes from automobile gas tanks; that he had once passed out after doing so; that thereafter his mind tended to wander; that petitioner had been one of seven children in a poor family that earned its living by picking cotton; that his father had died of cancer; and that petitioner had been a fond and affectionate uncle to the children of one of his brothers. Tr. of Advisory Sentence 7–10. In argument to the advisory jury, petitioner's counsel referred to various considerations, some of which were the subject of factual dispute, making a sentence of death inappropriate: petitioner's youth (he was 20 at the time of the murder), his innocence of significant prior criminal activity or violent behavior, the difficult circumstances of his upbringing, his potential for rehabilitation, and his voluntary sur-

render to authorities. *Id.*, at 13–17, 21–26. Although petitioner's counsel stressed the first two considerations, which related to mitigating circumstances specifically enumerated in the statute, he told the jury that in reaching its sentencing decision it was to "look at the overall picture . . . consider everything together . . . consider the whole picture, the whole ball of wax." *Id.*, at 50–52. In contrast, the prosecutor told the jury that it was "to consider the mitigating circumstances and consider those by number," *id.*, at 28, and then went down the statutory list item by item, arguing that only one (petitioner's youth) was applicable. Before proceeding to their deliberations, the members of the jury were told by the trial judge that he would instruct them "on the factors in aggravation and mitigation that you may consider under our law." *Id.*, at 5. He then instructed them that "[t]he mitigating circumstances which you may consider shall be the following . . ." (listing the statutory mitigating circumstances). *Id.*, at 56.

After receiving the advisory jury's recommendation (by majority vote) of death, and despite the argument of petitioner's counsel that the court should take into account the testimony concerning petitioner's family background and his capacity for rehabilitation, the sentencing judge found that "there [were] insufficient mitigating circumstances *as enumerated in Florida Statute 921.141(6)* to outweigh the aggravating circumstances." Tr. of Sentencing Proceedings 7 (emphasis added). He described the process by which he reached his sentencing judgment as follows: "In determining whether the defendant should be sentenced to death or life imprisonment, this Court is mandated to apply the facts to *certain enumerated* 'aggravating' and 'mitigating' circumstances." 10 Record 195 (emphasis added). The only mitigating circumstance he found was petitioner's youth. *Id.*, at 197.

We think it could not be clearer that the advisory jury was instructed not to consider, and the sentencing judge refused

to consider, evidence of nonstatutory mitigating circumstances, and that the proceedings therefore did not comport with the requirements of *Skipper* v. *South Carolina,* 476 U. S. 1 (1986), *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982), and *Lockett* v. *Ohio,* 438 U. S. 586 (1978) (plurality opinion). Respondent has made no attempt to argue that this error was harmless, or that it had no effect on the jury or the sentencing judge. In the absence of such a showing our cases hold that the exclusion of mitigating evidence of the sort at issue here renders the death sentence invalid. See *Skipper, supra* (evidence that defendant had adapted well to prison life); *Eddings, supra* (evidence of 16-year-old defendant's troubled family history and emotional disturbance). As in those cases, however, the State is not precluded from seeking to impose a death sentence upon petitioner, "provided that it does so through a new sentencing hearing at which petitioner is permitted to present any and all relevant mitigating evidence that is available." *Skipper, supra,* at 8.

We reverse the judgment and remand the case to the Court of Appeals. That court is instructed to remand to the District Court with instructions to enter an order granting the application for a writ of habeas corpus, unless the State within a reasonable period of time either resentences petitioner in a proceeding that comports with the requirements of *Lockett* or vacates the death sentence and imposes a lesser sentence consistent with law.

*It is so ordered.*