529 So.2d 679 (1988)
Jimmy Lee SMITH, Petitioner,
v.
Richard L. DUGGER, etc., et al., Respondents.
No. 71367.
Supreme Court of Florida.
June 16, 1988.
Rehearing Denied September 9, 1988.
Julian Clarkson, Gregg D. Thomas, Steven L. Brannock, Laura Whiteside and Carol Jean LoCicero of Holland & Knight, Tampa, and Sarah M. Bleakley, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for respondents.
PER CURIAM.
Jimmy Lee Smith files this petition for writ of habeas corpus seeking to set aside the death sentence which has been imposed on him. We have jurisdiction under article V, sections 3(b)(1) and (9), Florida Constitution, and deny the petition.
Smith was convicted of the first-degree murders of Bonnie Ward and her twelve-year old daughter, Donna Strickland. Following a verdict of guilt, the jury recommended by a twelve-to-zero vote that Smith be sentenced to death. In accordance with the jury's advisory sentence recommendation, the trial judge imposed two sentences of death. The following is an excerpt from the findings of fact made by the trial judge concerning the murders:
In the case of Bonnie Myrle Ward, the evidence shows that prior to her killing she cried and begged the defendant to please leave her alone; that thereafter he coolly and deliberately strangled her while he looked directly into her eyes; *680 that he noted her kicking and gasping for air; that he noted while strangling her that her tongue bulged and protruded from her mouth, and that, while pitilessly strangling his helpless victim, he exhorted her to "Die, Bitch."
Upon twelve year old Donna Lynn Strickland coming to her mother's aid and seeing the defendant's vicious attack upon her mother, the evidence shows that defendant then calmly and deliberately strangled the said Donna Lynn Strickland and, upon experiencing difficulty in choking her unconscious with his hands, held her by the throat with one hand while he wrapped an antennae cord about her throat with the other hand so as to more easily complete his wicked and vile purpose.
The court further finds that after choking both victims to the ground, the defendant removed all of the clothing from each of the totally helpless females so that both were completely nude and then proceeded to utilize a large stockman's type pocket knife to brutally stab and hack at each of his still living victims until they were dead. Bonnie Myrle Ward was stabbed six times in and around her left breast, after which her throat was cut. Donna Lynn Strickland was stabbed ten times in and around the left breast and her chest was then slit open by the defendant so that he could look at and touch this poor child's heart. These were slayings committed without any pity or pang of conscience, requiring cold, brutal and heartless calculation so as to inflict a high degree of pain and suffering. The defendant's actions clearly reflect his total and utter indifference to and enjoyment of the suffering of his victims.
This Court affirmed Smith's conviction and sentence in Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). Smith's first death warrant was signed in February, 1983. Smith then filed a motion for post-conviction relief under rule 3.850, Florida Rules of Criminal Procedure, which was denied without an evidentiary hearing. This Court affirmed the denial in Smith v. State, 445 So.2d 323 (Fla. 1983), cert. denied, 467 U.S. 1220, 104 S.Ct. 2671, 81 L.Ed.2d 375 (1984). During the pendency of the state 3.850 proceedings, Smith also filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Florida, and a stay of execution was entered. Smith v. Wainwright, Case No. MCA 83-2041 (N.D.Fla. 1983). Subsequently, that case was voluntarily dismissed without prejudice. On June 15, 1984, a second death warrant was signed and Smith filed a second motion for post-conviction relief which was summarily denied. This Court affirmed the denial and refused to grant a stay of execution in Smith v. State, 453 So.2d 388 (Fla. 1984). Smith subsequently filed a second petition for writ of habeas corpus in the federal district court, but relief was again denied. However, the Eleventh Circuit Court of Appeals entered an order staying Smith's execution in Smith v. Wainwright, 737 F.2d 1036 (11th Cir.1984). The Eleventh Circuit later reversed the district court's denial of the petition for writ of habeas corpus and remanded for an evidentiary hearing on the issue of whether defense counsel rendered ineffective assistance. Smith v. Wainwright, 777 F.2d 609 (11th Cir.1985), cert. denied, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). While a hearing has been held, we are advised that the court's ruling remains pending.
Smith claims that he is entitled to relief in this Court under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), in which the United States Supreme Court found reversible error where the jury was instructed to consider only statutorily enumerated mitigating circumstances and where the trial judge declined to consider nonstatutory mitigating circumstances. Smith is not barred from raising this claim since Hitchcock represented a sufficient change in the law to defeat the suggestion of procedural default. Thompson v. Dugger, 515 So.2d 173 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1224, 99 L.Ed.2d 424 (1988); Downs v. Dugger, 514 So.2d 1069 (Fla. 1987).
At trial, Smith was not limited in his introduction of mitigating evidence. The prosecutor discussed both statutory and *681 nonstatutory mitigating circumstances in his closing argument. However, the trial judge gave substantially the same instruction on aggravating and mitigating circumstances which was deemed erroneous in Hitchcock because it failed to explain that the jury could consider nonstatutory mitigating circumstances. In view of the erroneous jury instruction, we are compelled to conclude that a sentencing error occurred under the rationale of Hitchcock. Therefore, the only remaining question is whether such error can be considered harmless. Hitchcock; Booker v. Dugger, 520 So.2d 246 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988); Delap v. Dugger, 513 So.2d 659 (Fla. 1987).
As evidence pertaining to sentencing, the prosecution and defense jointly presented a videotape of Smith confessing to a police investigator. During the same confession, he admitted to murdering another woman in Texas and committing about twenty car thefts as a youth. Smith contends that the tape included such intangible mitigating factors as his demeanor; his tearful expressions of regret; and his expressions of repentance and lack of self-worth demonstrated by his requests that he be put to death for his acts. The tape also contained references to his traumatic and unstable childhood; his childhood sickliness, including rheumatic fever which caused permanent deterioration of his sight in one eye; his father's sudden death in an automobile accident which occurred while he was en route to visit Smith at the hospital; the fact that he was stabbed by a young neighbor; physical abuse and neglect by his grandfather, apparently due to his dubious paternity; abuse from his first stepfather; and the fact that he was the victim of sexual abuse and rape while imprisoned on property violations. Additionally, a psychological report was submitted during the penalty phase which reviewed Smith's psychological responses to several of the events in his life. Those responses included immaturity, repressed affectional needs, and weak emotional controls which gave way under stress. However, the report did conclude that Smith had no evidence of a major thought disorder or a major affect disturbance. Smith had an I.Q. of 120.
Against his attorney's advice, Smith delivered a closing address to the jury at the conclusion of the prosecutor's closing argument. Smith told the jury:
Normally Mr. Laramore would stand up here and plead for mercy and ask y'all to take under consideration that I be given a life sentence instead of death. But, it's my desire that I die in the electric chair for what I have done... . Y'all have been very patient in listening. You know the seriousness of the crime of what I have done. And I ask for no mercy. I ask that when you go in that room that you take into consideration all that's been said and come to a decision of death. Mr. Laramore has tried everything that he can do to talk me out of it, but I wouldn't let him do it, because I felt that it would not be justified if I received two life sentences for what I have done. It's a horrible thing that I have done. I realize this and I feel that I should pay with my life. If I go to prison with two life sentences, as I said before, I could kill again. And it's very possible that I would. It's very possible that I would really then get my revenge. And, since being in the Jackson County jail, I have begun to read my Bible. I have begun to seek God. And I've asked God to forgive me  to give me the words, you know, to put the knowledge in my head, to talk to you people. And all I can think of is to pay for what I have done with my life. There's no other way to pay for it. Two life sentences wouldn't do it, because I know that going to prison again, I know what I'm capable of doing. I know the pressures that are put upon you. And I just know that by going to the east unit and sitting on death row, waiting for my day to be taken out of the population, I would be taken out of society and I won't have a chance to hurt anyone else again, especially innocent people. I again thank you for your patience and the duty that you are doing, and I hope that you can go in there and  go in there with an easy conscience and reach a verdict of death. Thank you.
We are convinced beyond a reasonable doubt that even with the proper jury *682 instruction, the jury would not have made a recommendation for life imprisonment for this brutal double murder. There was simply insufficient mitigating evidence to offset the aggravating circumstances upon which the jury could have reasonably predicated such a recommendation. We are also convinced beyond a reasonable doubt that the judge would have sentenced Smith to death regardless of the jury's recommendation and that an override would have been consistent with the rationale of Tedder v. State, 322 So.2d 908 (Fla. 1975). Accordingly, we deny the petition for writ of habeas corpus.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and GRIMES, JJ., concur.
BARKETT and KOGAN, JJ., concur in result only.