574 So.2d 1075 (1991)
Walter Gale STEINHORST, Appellant,
v.
STATE of Florida, Appellee.
No. 72695.
Supreme Court of Florida.
January 15, 1991.
Rehearing Denied March 6, 1991.
Larry Helm Spalding, Capital Collateral Representative, Office of the Capital Collateral Representative, Tallahassee, and Stephen D. Alexander, Jessica R. Friedman and Harriet A. Robinson of Fried, Frank, Harris, Shriver & Jacobson, New York City, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Walter Gale Steinhorst, an inmate under sentence of death, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Following an evidentiary hearing, the trial judge denied the motion. Steinhorst appeals from the order of denial. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Steinhorst was convicted for the first-degree murders of four persons and sentenced to death on three of those counts and life imprisonment on the fourth. In affirming the judgment and sentence, this Court recited the following pertinent facts:
The testimony at trial showed that the appellant was a participant in a marijuana importation conspiracy. In accordance with the smuggling plan he was present on the night of January 23, 1977, near a beach landing site at Sandy Creek in Bay County. Appellant's job was to guard the entrance to a dirt road leading to the beach where the marijuana was to be brought ashore and loaded on trucks.
Two men, Harold Sims and Douglas Hood, and two teenage girls, Sheila McAdams and Sandra McAdams, approached the place where appellant was standing guard. Although there is nothing to explain their presence at that time and place, one reasonable inference is that they stumbled on the site of the smuggling operation by chance. The testimony indicates that there was then an exchange of fire between Harold Sims and the appellant. Harold Sims was shot and killed. Appellant then took the other three people captive, and confined them in a passenger van.

*1076 The testimony of several witnesses shows that appellant then proceeded to consult with several of his co-conspirators. It appears that Douglas Hood and the two McAdams girls were held captive for several hours while appellant and the leaders of the group decided what to do with them. Meanwhile, the landing and loading of marijuana proceeded almost until morning.
Bobby Joe Vines, the organizer of the smuggling scheme, testified that after the shooting of Harold Sims, appellant asked that his friend Charles Hughes be brought to him. Hughes was summoned from the landing site where he was bringing marijuana ashore. There was testimony from which the jury could infer that when Vines and the other men left the area with their loads of marijuana, appellant and Hughes departed with a human cargo of one dead and three living persons.
Several months later divers discovered the bodies of the victims in a sinkhole in Taylor County. The evidence showed that all four victims had been shot to death. The bodies were weighted down with concrete blocks.
Various participants in the smuggling operation met over the next several days at a farm house in Gadsden County. Several of the participants testified that appellant and Hughes stated that they had disposed of the victims and put them where they would never be found. Also, David Capo testified that appellant admitted the killings of all four victims.
Steinhorst v. State, 412 So.2d 332, 334-35 (Fla. 1982).
In the present appeal, Steinhorst raises five issues, only two of which merit discussion.[1] Steinhorst contends that, despite a proper request, the state denied his counsel access to favorable evidence during or before trial in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence to which he refers consisted of certain summaries of various witness interviews conducted by the Florida Department of Law Enforcement (FDLE) in the course of its investigation. He essentially makes two arguments with respect to these documents.
First, Steinhorst asserts that had this material been available to his attorney, he would have more effectively impeached some of the witnesses. He strongly relies on comments in the FDLE file that Bobby Joe Vines had originally made a statement that he did not know anything about the murders and that the U.S. attorney had offered Vines the possibility of immunity, release from jail, and protection for his family, depending on the extent of the information that he provided. However, there is no question that the jury knew that Vines was testifying under immunity. Therefore, it is unlikely that the jury would have been surprised to learn that he refused to implicate himself in the crimes until he was offered immunity.
Furthermore, while Vines clearly implicated Steinhorst in the killings, he was not the only witness to do so. David Capo testified that Steinhorst had explained that he had to kill Sims because Sims refused to leave the area and pulled a gun on him. Steinhorst told Capo that the remaining persons were taken care of because they had recognized David Goodwin, one of the other drug smugglers. Steinhorst told Capo that he had put these people somewhere that they would never be found. Bill Epperson testified that Steinhorst stated that the girls had been put somewhere where nobody would find them. Hughes later told Epperson, in Steinhorst's presence, that Steinhorst had done a "really good job" and put the girls in a nice hole where nobody would ever find them. FDLE agent Ray Fredericks testified that David Goodwin had told him that Steinhorst had ordered him to hold a gun on the three remaining persons while Steinhorst tied, gagged, and blindfolded them. Many other witnesses supplied corroborating details. *1077 Therefore, even if Bobby Vines could have been more effectively impeached, it is unlikely that Steinhorst would have prevailed.
The second thrust of Steinhorst's Brady argument is that one of the FDLE reports suggested that Sims and Hood may have been in the area to hijack the drug smugglers. Some of the statements indicated that they were violent and carried guns and that each of them had criminal backgrounds. It is unlikely that much of this information would have been admissible had counsel sought to introduce it. Moreover, it is clear that trial counsel was aware of the criminal backgrounds of Hood and Sims, and he stated in closing argument that they might have been in the area to "rip off" the drug smugglers. In any event, it must be remembered that Steinhorst did not receive the death penalty for the murder of Sims. Even if the defense had been able to convince the jury that the two men and two teenage girls had come to steal the marijuana, this would not have provided a defense to the subsequent coldblooded killings of the other three victims.
Brady requires the disclosure only of evidence that is both favorable to the accused and material either to guilt or punishment. The evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Therefore, even assuming that the FDLE summaries were the kind of documents contemplated for disclosure under Brady, there was not a reasonable probability that had they been furnished to the defense, the result of Steinhorst's trial would have been different.
Steinhorst also makes a claim for relief under the rationale of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). There is no doubt that in instructing the jury on the mitigating circumstances the trial judge referred only to the statutory mitigating factors. Further, the record reflects some ambiguity with respect to the trial judge's understanding of the significance of nonstatutory mitigating evidence. Therefore, the question before us is whether the Hitchcock error was harmless.
In a number of cases in which substantial nonstatutory mitigating evidence was introduced, this Court held that the error was not harmless. See, e.g., Hall v. State, 541 So.2d 1125 (Fla. 1989); Mikenas v. Dugger, 519 So.2d 601 (Fla. 1988); Riley v. Wainwright, 517 So.2d 656 (Fla. 1987). In other cases, the death sentence has been sustained in the face of Hitchcock error because there was little or no nonstatutory mitigating evidence presented. See, e.g., Alvord v. Dugger, 541 So.2d 598 (Fla. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990); Ford v. State, 522 So.2d 345 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 823 (1989); Delap v. Dugger, 513 So.2d 659 (Fla. 1987). In the instant case, there was almost a total absence of nonstatutory mitigating evidence. Only Steinhorst himself took the stand during the penalty phase, and his testimony was limited to showing that the events leading to his dishonorable discharge from the army did not constitute a prior significant criminal record. While there was no evidence to show whether it was Steinhorst or Hughes who actually shot the victims, it is clear that both men cooperated to bring about their demise.
Steinhorst does not argue that his counsel was ineffective for failing to introduce nonstatutory mitigating evidence. Rather, he says that counsel was under the impression that existing law prevented him from doing so. However, the only nonstatutory evidence which Steinhorst now says would have been introduced at that time was testimony from relatives and friends concerning his steady employment history and devotion to his family. There is no suggestion of the existence of any nonstatutory mental mitigating evidence. In fact, the report of a recent psychological examination indicates that Steinhorst is an intelligent, nonviolent, socially adept person. In light of the evidence surrounding the several murders, we conclude that the outcome of this case would have been the same even *1078 if the nonstatutory mitigating evidence then available had been introduced and the judge and jury had known that it should be considered. In short, the Hitchcock error was harmless.
We affirm the denial of the motion for postconviction relief.
It is so ordered.
SHAW, C.J., OVERTON, McDONALD and GRIMES, JJ., and EHRLICH, Senior Justice, concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I concur as to guilt but dissent as to the penalty for the reasons stated in my opinion in Meeks v. Dugger, No. 71,947 (Fla. Jan. 10, 1991) (Kogan, J., specially concurring). Steinhorst's trial concluded in May 1978. This was several months before this Court's opinion in Songer v. State, 365 So.2d 696, 700 (Fla. 1978) (on rehearing), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), which retroactively conformed Florida law to the requirements of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
Prior to Songer, this Court had declared it illegal to present nonstatutory mitigating evidence during the penalty phase of a capital trial. E.g., Cooper v. State, 336 So.2d 1133, 1139 & 1139 n. 7 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). This is the law to which Steinhorst's attorney complied, for which Steinhorst now is being penalized.
For example, the majority finds an "almost total absence of nonstatutory mitigating evidence" on this record. The obvious reason, which Steinhorst's counsel directly states, is that such evidence could not lawfully have been introduced until Songer retroactively changed Florida law several months after Steinhorst's trial ended.
The majority then goes on to find any failure to consider such evidence harmless because the evidence is relatively insubstantial. I do not share this conviction. The record before us discloses substantial mitigating evidence improperly excluded from Steinhorst's trial as a direct result of this Court's erroneous holding in Cooper. This includes evidence that Steinhorst was devoted to his family; had a steady employment history; had a good standing in his community prior to his crime; was unlikely to repeat his violent conduct; and had adapted well to prison life and thus was capable of rehabilitation within that environment. Such evidence clearly constitutes substantial mitigating evidence that must be considered. E.g., Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (capacity for rehabilitation).
It is clear to me that Steinhorst meets all the criteria I stated in my opinion in Meeks, which are essentially the same criteria now being used in the federal courts. See, e.g., Smith v. Dugger, No. TCA 90-400350WS, slip op. (N.D.Fla. June 8, 1990). The present trial occurred prior to Songer. There is substantial nonstatutory mitigating evidence not presented because defense counsel justifiably believed it could not lawfully have been admitted at trial. See majority op. at 1077. Such evidence is available from persons competent to be witnesses who stand ready to testify.
For these reasons, I believe there is no question that the federal courts under their own precedent must grant relief if this Court fails to do so. E.g., Smith. No good reason exists to delay such relief any longer. I thus would order a new sentencing hearing before a jury in full compliance with the requirements of Lockett and its progeny.
BARKETT, J., concurs.
NOTES
[1] The remaining issues are: (1) that the state violated discovery rules in withholding several defense exhibits; (2) that the court below failed to consider appellant's claim that the state had submitted an incomplete list of witness names; and (3) that the court below erred in holding that Steinhorst's counsel was not ineffective.