RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0288p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BOBBY T. SHEPPARD,

        *Petitioner-Appellant,*

    *v.*

NORM ROBINSON, Warden,

        *Respondent-Appellee.*

No. 13-3165

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:00-cv-00493—Gregory L. Frost, District Judge.

Argued: April 29, 2015

Decided and Filed: December 8, 2015

Before: MERRITT, BATCHELDER, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Allen L. Bohnert, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Allen L. Bohnert, Erin Gallagher Barnhart, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellant. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

    KETHLEDGE, J., delivered the opinion of the court in which BATCHELDER, J., joined. MERRITT, J. (pp. 10–17), delivered a separate dissenting opinion.

1

---

**OPINION**

---

KETHLEDGE, Circuit Judge.  More than 20 years ago, Bobby Sheppard shot and killed a Cincinnati store owner, Dennis Willhide, execution-style, as Willhide lay helpless on the floor in front of him.  A jury convicted Sheppard of murder, and the state trial court sentenced him to death.  Since then Sheppard has challenged his conviction and sentence on direct appeal in the Ohio Court of Appeals and the Ohio Supreme Court; filed two petitions for post-conviction relief in state court, which he likewise litigated all the way through the Ohio appellate courts; and filed a federal habeas petition, whose denial he challenged in this court.  In every one of those proceedings, at every stage, the courts denied relief; and in three of those proceedings the United States Supreme Court denied certiorari.  Sheppard now seeks to reopen his federal habeas case in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which was decided a month before Sheppard filed his petition for certiorari in his federal habeas case.  Yet Sheppard did not even mention *Martinez* in his petition.  The district court denied Sheppard's motion to reopen his case under Rule 60(b).  We affirm.

I.

Our last opinion in this case sets forth most of the relevant facts.  *See Sheppard v. Bagley*, 657 F.3d 338 (6th Cir. 2011).  Here we discuss only certain procedural facts especially relevant to this appeal.

During the penalty phase of Sheppard's trial, Sheppard claimed that he suffered from paranoid schizophrenia.  Sheppard's expert, Dr. Jeffrey Smalldon, testified in detail about the nature of paranoid schizophrenia and about his conclusion that Sheppard was schizophrenic.  After hearing all of the evidence, however, the jury recommended a death sentence.

Soon thereafter, one of the jurors, Stephen Fox, told somebody in the prosecutor's office that, during the penalty phase, he had asked his former landlord, Helen Jones, for a layperson's definition of paranoid schizophrenia.  The prosecutor promptly informed the trial court, which held an *in camera* hearing.  There, in response to questions from the court and Sheppard's

attorney, Fox testified that Jones had given him a "very boiled down" definition of paranoid schizophrenia, namely, that "those kind of people just are not really in touch with reality." Fox further testified that Jones's definition had not influenced his decision to vote for the death penalty and that he had not discussed Jones's definition with any other jurors. After hearing Fox testify, the court found that Sheppard had not suffered any prejudice from Fox's misconduct. The court thereafter sentenced Sheppard to death.

Sheppard then filed a motion for a new trial and a motion for resentencing, arguing among other things that his sentence was invalid because of Fox's misconduct. Sheppard attached an affidavit from Jones, in which she confirmed that she had given Fox a brief description of paranoid schizophrenia. Sheppard App'x at 876. In response, the government submitted its own affidavit from Jones, in which she said that her description of paranoid schizophrenia was "totally consistent" with Dr. Smalldon's testimony. *Id.* at 888. The trial court denied the motions, finding again that Fox's misconduct was harmless. The Ohio Court of Appeals affirmed, as did the Ohio Supreme Court. *State v. Sheppard*, 703 N.E.2d 286 (Ohio 1998). The United States Supreme Court denied certiorari. *Sheppard v. Ohio*, 527 U.S. 1026 (1999).

Sheppard then returned to the trial court and filed a petition to vacate his sentence, arguing that his trial counsel should have presented more evidence that Sheppard was schizophrenic on the day he murdered Willhide. Sheppard App'x at 889, 894. The trial court denied the petition, the Ohio Court of Appeals affirmed, and the Ohio Supreme Court denied review. *State v. Sheppard*, 1999 WL 162457 (Ohio App. 1st Dist. 1999); *State v. Sheppard*, 713 N.E.2d 1049 (Ohio 1999). The United States Supreme Court again denied certiorari. *Sheppard v. Ohio*, 528 U.S. 1168 (2000).

Sheppard then filed a second petition in state court seeking to vacate his sentence. This time, Sheppard claimed that his trial counsel was ineffective for failing to submit "at least some evidence, by affidavit or testimony, to support their motion for new trial on the basis of juror misconduct." Sheppard App'x at 1064. Specifically, Sheppard said that "counsel should have submitted evidence from a practicing psychologist to show" that the definition of paranoid schizophrenia that Jones had given Fox was misleading. *Id.* The trial court denied the petition

because Sheppard could have raised the claim in his first petition. The Ohio Court of Appeals affirmed, and the Ohio Supreme Court denied review. *State v. Sheppard*, 2001 WL 331936 at \*2 (Ohio App. 1st Dist. 2001); *State v. Sheppard*, 751 N.E.2d 483 (Ohio 2001).

In 2000, Sheppard filed a federal habeas petition, in which he alleged 15 claims for relief. Among them was that his trial counsel was ineffective for failing to submit evidence "from an expert" to show that Jones had given Fox a misleading definition of paranoid schizophrenia. Sheppard App'x at 1490. Sheppard also claimed that his trial counsel should have obtained testimony from Jones that she had told Fox more than paranoid schizophrenics are "out of touch with reality." R. 89 at 116-17.

In 2002, a magistrate judge held an evidentiary hearing at which Fox and Jones testified. Fox's testimony was mostly consistent with what he had said earlier: He testified that, before he spoke to Jones, he had already decided to vote in favor of the death sentence and that Jones had given him a brief layperson's definition of schizophrenia. Sheppard App'x at 598-603. After persistent questioning from Sheppard's attorney, however, Fox conceded that his conversation with Jones had made it easier for him to vote for the death sentence. *Id.* at 603-04. Jones herself testified that she could not remember much of her conversation with Fox, but that she had given him the same definition "that any person would find in the dictionary or Psych 101." *Id.* at 627. Sheppard's attorneys also questioned Jones about her affidavit from seven years earlier, in which she had said that the definition she gave Fox was "totally consistent" with Dr. Smalldon's testimony. *Id.* at 648. Jones initially said that she could not remember whether she had actually read Smalldon's testimony. *Id.* at 650. But later, after repeated questioning, she conceded that she had not read it. *Id.* at 657.

The magistrate judge recommended that the district court find that Jones's ineffective-assistance claim was procedurally defaulted. Sheppard did not object, and in 2009—15 years after he murdered Willhide—the district court denied his petition. On appeal, Sheppard did not pursue his trial-court ineffective-assistance claim, though he pursued many others. In September 2011, this Court affirmed the denial of Sheppard's petition. *Sheppard*, 657 F.3d at 348. We refused to consider the new testimony from Jones and Fox because "[t]he testimony in Sheppard's evidentiary hearing was taken in violation of [28 U.S.C.] § 2254(e)(2)." *Id.* at 344.

In March 2012, the Supreme Court decided *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which is the case that Sheppard seeks to rely on here. There, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. Fully a month later, Sheppard filed his petition for certiorari but chose not to mention *Martinez* or any of the reasons why he now thinks *Martinez* requires his case to be reopened. The Court denied Sheppard's petition. *Sheppard v. Robinson*, 132 S. Ct. 2751 (2012). At that point—after 12 years of litigation in federal court—the judgment in his federal habeas case became final.

Yet Sheppard's motion practice continued. Returning to the district court, Shepard filed a motion for relief under Rule 60(b), arguing that the Supreme Court's decision in *Martinez* amounted to an extraordinary circumstance justifying reconsideration of his ineffective-assistance claim. The district court denied the motion. This appeal followed.

II.

A.

Sheppard has already had a full round of federal habeas litigation, so a threshold question is whether his Rule 60(b) motion should be treated as a "second or successive petition" under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(b). *See Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005). A Rule 60(b) motion "is in substance a successive habeas petition and should be treated accordingly" if (among other things) it seeks to relitigate a habeas claim already adjudicated on the merits in federal court, or "seeks to add a new ground for relief[.]" *Id.* at 531-32. In contrast, "[i]f neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed . . . creates no inconsistency with the habeas statute or rules." *Id.* at 533. Thus, to avoid the application of § 2244(b), a Rule 60(b) motion must "confine[] itself" to the "first federal habeas petition" and challenge only "a nonmerits aspect"—*e.g.*, a determination that a claim was time-barred or procedurally defaulted—"of the first federal habeas proceeding." *Id.* at 534.

Some aspects of Sheppard's Rule 60(b) motion fail this test.  In Sheppard's first federal habeas petition and brief in support, he asserted that his trial counsel had been ineffective because of two omissions (among others) in the state trial court:  first, that counsel did not submit expert testimony to challenge the definition of paranoid schizophrenia that Jones gave to juror Fox, *see* Sheppard App'x at 1490; and second, that counsel did not elicit testimony from Jones to the effect that Fox had mischaracterized her description of paranoid schizophrenia, *see* R. 89 at 117.  Sheppard's Rule 60(b) motion would add two more omissions to this list:  that counsel did not obtain from Fox an admission that his conversation with Jones made it "easier" for him to vote in favor of a death sentence; and that counsel did not obtain from Jones an admission that she had not read Smalldon's testimony before submitting her affidavit to the trial court.  R. 150 at 46.  Neither of those omissions were set forth in Sheppard's first habeas petition.  (Indeed his brief in support of that petition told the district court that Sheppard's trial counsel "could *not* have reasonably anticipated" that Jones had not read Smalldon's testimony, R. 89 at 108-09 (emphasis added), which conflicts with Sheppard's claim now that counsel should have elicited an admission to that effect.)  Hence Sheppard's Rule 60(b) motion does not confine itself to the substance of his first habeas petition, but instead tries to add new grounds for relief.  To that extent, therefore, Sheppard's Rule 60(b) "is in substance a successive habeas petition and should be treated accordingly."  *Gonzalez*, 545 U.S. at 531.  Thus we will not consider Sheppard's claims concerning the admissions that his trial counsel allegedly should have obtained from Fox and Jones.

That leaves Sheppard's claims based upon the two omissions that he did allege in his earlier petition.  Sheppard's Rule 60(b) motion is not second or successive to the extent that it challenges the district court's determination that these claims are procedurally defaulted.  *See id*. at 532 n.4.  As to these claims only, therefore, we turn to the question whether Sheppard has met the Rule 60(b) standard to reopen the district court's judgment.

B.

We review the denial of a Rule 60(b) motion for an abuse of discretion.  *Henness v. Bagley*, 766 F.3d 550, 554 (6th Cir. 2014).

Sheppard argues that the Supreme Court's decision in *Martinez* is reason to allow him to reopen his federal habeas case under Rule 60(b)(6). That rule applies only if the movant shows "extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (internal quotation marks omitted). Per the Supreme Court, "[s]uch circumstances will rarely occur in the habeas context." *Id.*

The Court's decision in *Gonzalez* governs our decision here. In *Gonzalez*, the district court held that Gonzalez's claims were time-barred under 28 U.S.C. § 2244(d). The Eleventh Circuit denied a certificate of appealability. During the 90-day period in which Gonzalez could have filed a petition for certiorari with the Supreme Court, however, the Court granted review in *Artuz v. Bennett*, 531 U.S. 4 (2000). And in *Artuz* the Supreme Court rejected the same interpretation of § 2244(d) that the district court had adopted in holding that Gonzalez's claims were time-barred. Citing that fact, Gonzalez filed a motion under Rule 60(b)(6), arguing that *Artuz* was an extraordinary circumstance that justified reopening his habeas case. The district court denied the motion.

For two reasons, the Supreme Court held that the district court "was correct to deny relief." 545 U.S. at 538. First—and here the Court used the term "extraordinary" in the sense of "unusual"—the Court stated that it was "hardly extraordinary" that the Supreme Court adopted a different interpretation of § 2244(d) than the district court and the Eleventh Circuit had adopted. *Id.* at 536. Second—and here the Court used "extraordinary" in a more equitable sense—the Court stated Gonzalez's "lack of diligence" in seeking review of the district court's interpretation of § 2244(d) "confirms that *Artuz* is not an extraordinary circumstance justifying relief from the judgment in petitioner's case." *Id.* at 537.

Similar reasons support the district court's decision here. First, our court has already held that the Supreme Court's decision in *Martinez* and its follow-on decision in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013) are not "extraordinary" within the meaning of Rule 60(b)(6). *See, e.g.*, *Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014) (capital case). True, *Martinez* recognized a "narrow exception[,]" 132 S.Ct. at 1315, to the Court's earlier decision in *Coleman v. Thompson*, 501 U.S. 722 (1991). But *Martinez* did not overrule *Coleman*, and thus is not as extraordinary as Sheppard suggests.

Second, like Gonzalez, Sheppard was not diligent in seeking relief from the Supreme Court on direct review in his habeas case. Indeed Sheppard was even more derelict than Gonzalez was. In Gonzalez's case, during the period in which he could have sought certiorari, the Supreme Court had merely *granted review* in *Artuz*—and yet the Court held that Gonzalez should have filed a petition that flagged the issue and requested a remand if the Court's decision came out his way (which it did). 545 U.S. at 537. Here, the Supreme Court had *actually issued its opinion* in *Martinez* a month before Sheppard filed his petition for certiorari—and yet Sheppard never mentioned the case in his petition. Had he done so, the Court's decision in *Gonzalez* makes "indisputabl[y]" clear, the Court "would surely have granted him the reconsideration . . . that he later sought in his Rule 60(b) motion." *Id*. at 537 n.10. As in *Gonzalez*, therefore, Sheppard's "lack of diligence confirms" that *Martinez* "is not an extraordinary circumstance justifying relief from the judgment in [his] case." *Id.* at 537.

The Supreme Court stopped there in *Gonzalez*—and thus (excepting our response to the dissent) so do we. Extraordinary circumstances within the meaning of Rule 60(b)(6) are a rarity in habeas cases. *Id*. at 536. Sheppard has not shown they are present here.

Finally, we make some points in response to our dissenting colleague. First, the dissent seeks largely to relitigate the issues we decided in Sheppard's last appeal. The Supreme Court denied certiorari as to those issues, and we are content to leave things where they stood last time. Second, the dissent is mistaken as to what, exactly, we held in our last appeal. We did not hold, as the dissent asserts throughout its opinion here, that Sheppard's counsel in state court had been constitutionally ineffective. Instead we held that Sheppard had not been "diligent" for purposes of § 2554(e)(2). *Sheppard*, 657 F.3d at 343-44. That holding does not even roughly equate to a holding that Sheppard's counsel was ineffective for purposes of the Sixth Amendment—not least because we had no reason to determine whether Sheppard had shown any prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). And we would add that the implications of Fox's and Jones's testimony in the federal evidentiary hearing are not nearly as Copernican as the dissent and Sheppard think they are. *See, e.g.*, *Sheppard*, 657 F.3d at 344 ("there is no reason to think that testimony given seven years after the relevant events is necessarily more accurate or truthful than testimony given promptly after those events").

Third, the dissent entirely overlooks that the federal courts have already entered a final judgment denying Sheppard's petition for habeas relief in this case. And the Supreme Court has made clear—in a death case, no less—that the federal circuit courts must afford that judgment profound respect. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying federal habeas relief").

Lastly, *Gonzales* is not "irrelevant[,]" Dissent op. at 15, to this case. That case's profile—a Rule 60(b) appeal seeking to set aside a final judgment in a habeas case on the ground that some new Supreme Court decision is "extraordinary"—is precisely this case's profile. So of course we are bound to apply *Gonzalez* here. And it is hardly "contrive[d,]" *id.* at 16, to apply the Supreme Court's precedents in habeas cases. Faithfully applied, those precedents make clear that—more than 20 years now after Sheppard murdered Dennis Willhide—Sheppard is not entitled to relitigate his case yet again.

*       *       *

The district court's January 14, 2013 order denying Sheppard's Rule 60(b) motion is affirmed.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.   There are glaring fundamental, federal constitutional violations in this death penalty case.  My colleagues must have tongue-in-cheek when they conclude simply that "Sheppard is not entitled to relitigate his case yet again."  The fact is that Sheppard has not had an opportunity in federal court to ever "litigate" the merits of his Sixth and Eighth Amendment issues at all.  The court has refused at each step to reach the merits of any constitutional issue and has avoided litigating the main points of Sheppard's case. Procedural default has been used improperly once again to suspend the writ of habeas corpus in a criminal case—here a capital case—in violation of Article I, section 9 ("The Privilege of the Writ of Habeas Corpus shall not be suspended" except in cases of "Rebellion or Invasion.").

In this death penalty case, there are four separate issues that must be discussed:  First, whether there are Sixth and Eighth Amendment violations regarding the right to confrontation and to an impartial jury, as well as the right to a fair sentencing hearing in mitigation of the death penalty.  Second, whether these constitutional violations are procedurally defaulted and may not be considered in federal court because Sheppard did not pursue them diligently in state court. Third, whether the court's "defective counsel" basis for avoiding a ruling on the merits of the constitutional violation is itself an independent basis for issuing the writ because of ineffective counsel.  Fourth, whether, alternatively, two recent Supreme Court opinions, *Martinez v. Ryan*, 132 S. Ct. 1309, and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), allow Sheppard to overcome the procedural default of the ineffective-assistance-of-trial-counsel issue that my colleagues in the majority characterize as a noncognizable "second or successive petition," and not "extraordinary" enough to warrant relief.  I will discuss these issues in order because the first two issues provide the necessary background information for the last two issues.

I.      **Juror Misconduct Resulted in Sixth and Eighth Amendment Violations**

The court vastly understates the effect Dr. Helen Jones' telephone conversation had on juror Fox's mind set and discussions during jury deliberations.  At the federal evidentiary

hearing, Fox reversed his previous state court testimony that the conversation had no effect on his vote. Retracting that state court testimony in federal court, he said that it "must have" contributed to the verdict. Trans. of Fed. Evid. Hr'g, June 24, 2002, at 136-37. Based on his testimony in federal court, no reasonable person can now deny that what Jones told him during jury deliberations influenced his position and his vote in favor of the death penalty.

Not only does the case present a clear violation of the "confrontation" and "impartial jury" provisions of the Sixth Amendment ("the accused shall enjoy the right to . . . an impartial jury [and] . . . to be confronted with the witnesses against him . . . ."), but it injected false extra-judicial information into the trial. That false information undermined Dr. Smalldon's persuasive testimony in the mitigation phase of the case and denied Sheppard a proper sentencing hearing. A properly bifurcated sentencing hearing is required under the Sixth Amendment. *Gregg v. Georgia*, 428 U.S. 153, 190-93 (1976) (adopted from the Model Penal Code). Extra-judicial information that negates a capital defendant's mitigation evidence of mental illness violates the Eighth Amendment cruel and unusual punishment provision, which requires a decision that fully considers such mitigating circumstances. *Hitchcock v. Dugger*, 481 U.S. 393 (1987); *Skipper v. South Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

The court's answer to Sheppard's argument that the Fox-Jones conversation clearly violated his Sixth and Eighth Amendment rights is simply a conclusory statement that the court will not consider it because his counsel was "plainly" not diligent in developing the factual basis for his claim in state court, thereby precluding further investigation and review in federal court. *Sheppard v. Bagley*, 657 F.3d 338, 343 (6th Cir. 2011). This is the court's first mistake.

The court does not even mention that the state trial court did not permit counsel to further develop the record in state court after the initial motion for a new trial in which Fox and Jones gave the evidence that they later retracted in federal court. The record is clear that shortly after the jury's death verdict, an assistant district attorney in Hamilton County, Ohio, told state trial Judge Crush that juror Fox, a neighbor, told her at a party over the weekend that he had called Jones, whom he believed to be a psychologist. He said this occurred during jury deliberations and that he had a conversation about Sheppard's mitigation defense. Recognizing that this conversation was highly improper, she advised Judge Crush. The jury had returned its death

verdict the week before. Judge Crush had an informal hearing in his chambers with counsel for the parties in which juror Fox was apologetic for violating Judge Crush's instruction to the jury against discussing the case with others. At that time juror Fox did not want to tell the judge that the conversation influenced his view of the case. He said it had "no effect" and that he had already made up his mind before he talked to Jones. After a brief discussion, Judge Crush immediately ruled that he would not upset the death verdict because the improper telephone conversation was "harmless error." They did not discuss the Sixth and Eighth Amendment principles and case law that this extra-judicial conversation violated.

During the in-chambers hearing, Judge Crush questioned juror Fox about his call to Helen Jones. After asking Fox a few questions, Judge Crush quickly declared himself "satisfied" that the improper conduct by Fox had not prejudiced Sheppard's right to a fair trial. Tr. Trans. of May 30, 1995 (proceeding in chambers), at 1255. Sheppard's counsel then followed up with a few questions and informed Judge Crush that Sheppard would move for a new trial in light of the extra-judicial contact. In response, the prosecutor asked the trial court to put down an order stating that there could be no contact with any jurors without specific prior permission of the court. Sheppard's counsel stated that he thought such an order was inappropriate and that he was entitled to contact the jurors. Judge Crush said he had already told the jurors that they did not need to talk to anyone about the case and he intended "to keep these jurors from being pestered with that," and went on to opine that "the public defender's office is almost religious in their opposition to the death penalty. People under the influence of such conviction do not always use good sense. I am just worried about harassing the jurors." *Id.* at 1261-62. The prosecutor then suggested that jurors only be allowed to testify under oath in open court because affidavits "lead[] to confusion amongst jurors and witnesses." *Id.* at 1263. Sheppard's counsel objected to any such "prior restraint" that would prohibit speaking with the jurors. Judge Crush then agreed that the jurors could be contacted by defense counsel but only so long as the prosecutor received advance notice and was present and allowed to question them as well. Sheppard's counsel could not conduct an independent investigation of the jurors. Judge Crush went on to explain that jurors can be "manipulated," and "[l]ots of problems com[e] from questioning jurors," so he "encourage[s jurors] not to [speak with counsel] because your [sic] statements can be misconstrued." *Id.* at 1264-65.

Although Judge Crush reacted negatively to defense counsel's request to speak with jurors, he did not foreclose Sheppard's counsel from interviewing Helen Jones. After the initial hearing in chambers, counsel interviewed Jones and received a brief affidavit stating that she received a phone call from Fox "asking me for information about paranoid schizophrenia. I gave Mr. Fox a brief description and explanation of paranoid schizophrenia." Affidavit of Helen Jones in Support of Motion for New Trial (Aug. 29, 1995). The prosecutor received a more extensive affidavit from Jones stating falsely that she "thoroughly reviewed the transcript of Doctor Jeffrey Smalldon" and "[t]he brief explanation I gave Mr. Fox of paranoid schizophrenia was totally consistent with the testimony of Dr. Smalldon. . . . [N]othing I told [Fox] contradicted anything testified to by Dr. Jeffrey Smalldon." Affidavit of Helen Jones in Response to Motion for New Trial (Oct. 1, 1995). Judge Crush denied the motion based on Jones' affidavits and Fox's statement at the hearing in chambers that his extra-judicial conversation with Jones had no effect on his vote for the death penalty. *State v. Sheppard*, No.B9405527, Entry Overruling Motion for New Trial (Oct. 10, 1995). Judge Crush refused to set the death penalty aside and grant a new trial of the sentencing phase of the case. The Ohio Court of Appeals and Supreme Court simply affirmed the harmless error ruling.

It is undisputed that the Fox-Jones conversation interfered with the jury's deliberations about the mitigating effect of Sheppard's paranoid schizophrenia on his culpability for the death penalty. Dr. Smalldon, an expert, board-certified, experienced psychologist, testified at length during the penalty phase of the trial. He testified about his observations during numerous interactions with Sheppard over an eight-month period that included many psychological and neuropsychological evaluations and tests. Dr. Smalldon also examined Sheppard's medical and school records and interviewed family members. Dr. Smalldon testified that many family members told him that Sheppard's behavior changed dramatically beginning in the fall of 1993 when Sheppard was 17 years old. Sheppard sustained a head injury in a car accident in September 1993, which could have triggered the onset of Sheppard's paranoid schizophrenia. Dr. Smalldon also testified that the most common time for onset of paranoid schizophrenia is the late teens and early twenties. Tr. Trans. of May 16, 1995, at 1075. In addition, Dr. Smalldon testified that Sheppard had an extensive family history of mental illness on his mother's side, including paranoid schizophrenia. *Id*. at 1056.

Dr. Smalldon testified that the results from all of his testing point clearly to paranoid schizophrenia. His testimony is persuasive. He had "no question about his diagnosis." *Id*. at 1088, 1130. Dr. Smalldon's testimony was clear that Sheppard's illness "substantially impaired his ability to conform his conduct to the law because of his radically compromised insight [and] judgment . . . ." *Id*. at 1123. That is the mitigating evidence the Fox-Jones conversation undermined.

Sheppard was only eighteen years and two months old when the murder occurred—only two months past the age of "diminished culpability" that makes an adolescent ineligible for the death penalty under the Supreme Court's opinion in *Roper v. Simmons*, 543 U.S. 551 (2005). In dicta, the Court elaborated that these reasons "do not disappear when the individual turns 18." *Id*. at 574.

## II.      The Court's Ineffective Assistance of Counsel Decision

When Sheppard's counsel attempted to pursue and reassert the constitutional claims in the first and second state habeas corpus proceedings based on the Fox-Jones extra-judicial conversation, Judge Crush ruled against Sheppard on grounds of "res judicata" and the Ohio appellate courts refused to disturb earlier rulings of "harmless error." Sheppard was, therefore, foreclosed by "res judicata" from pursuing the issue until he filed his federal habeas petition. Counsel was then allowed to depose Fox and Jones and call them as witnesses. It was only then that Sheppard's counsel could examine the witnesses and only then that they retracted and reversed their earlier testimony. I am, therefore, unable to find a factual basis that would amount to professional dereliction of duty and ineffective assistance of counsel. I dissented from our court's earlier ruling concerning counsel's performance. *Sheppard,* 657 F.3d at 350. My colleagues held, based on counsel's access to Fox and Jones in the state proceedings, that the retraction of their earlier "harmless error" statements in the state court should have been presented to the state court despite the negativity of Judge Crush's instructions and the state law bar of "res judicata."

Although I am not convinced of our court's previous holding that counsel performed below normal professional standards, there can be no doubt that that was its holding. *Sheppard*, 657 F.3d at 343-44. That was the first and only time that any court has made such a ruling in this

case. So the next question becomes: If the court believes Sheppard's counsel was ineffective and simply failed to discover and present retractions by Fox and Jones of their earlier statements in state court, why should not the writ issue on this ground? Why would it not entitle Sheppard to a new trial on the validity of his mental illness claim—the claim that Fox and Jones in their extra-judicial conversation undermined and the conversation that Fox now concedes led to his vote for the death penalty and the position he took during his discussion with other jurors during their deliberations? It makes no sense for the court to regard its own previous definitive ruling that Sheppard's counsel was derelict as now constituting a "second or successive" petition barred by 28 U.S.C. § 2244(b). It is a ruling of this court that the court is unwilling to overturn or retract. It stands as the law of the case.

### III.     "Defective Counsel" Itself Basis for Writ

Neither *Gonzalez v. Crosby*, 545 U.S. 524 (2005), nor any other case indicates that a federal court's own prior holding in the same case of ineffective assistance of counsel or other constitutional error may be procedurally defaulted as a "second or successive" petition. *Gonzalez* is simply irrelevant. It is about tolling the statute of limitations in a habeas case, and no federal court had made a finding of a constitutional violation in the case. In the case at bar this court found counsel's performance deficient. Sheppard then moved under Rule 60(b) that this court had ruled that counsel was derelict and that the consequences of derelict counsel should be the issuance of the writ as to the mitigation phase of the trial.

The court wants once again to find a way to avoid the merits of the constitutional violations—first the Sixth and Eighth Amendment violations and now a Sixth Amendment violation of the right to counsel. But the court itself has made a clear Sixth Amendment ruling of ineffective counsel in its effort to avoid ruling on the merits of the Fox-Jones juror misconduct violation. The court cannot have it both ways. Its earlier ruling is completely inconsistent with its present ruling that ineffective counsel may not now be considered.

### IV.     Procedural Default Should Be Excused under *Martinez v. Ryan*, 132 S. Ct. 1309 and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013)

If we accept *arguendo* the court's assertion that Sheppard's ineffective assistance of counsel claim is barred as a "successive petition," *Trevino v. Thaler* provides an alternative,

independent basis for preserving Sheppard's right to have the court decide the ineffective assistance claim on the merits.

Sheppard made a claim in his federal habeas petition that his trial counsel was ineffective in the motion-for-new-trial proceedings for failing to present evidence of prejudice to overcome Judge Crush's finding of harmless error. The claim was held to be procedurally defaulted in the federal habeas proceeding because the same claim was not raised at the first opportunity in state court by Sheppard's state post-conviction counsel in Sheppard's first state post-conviction petition. After the Supreme Court decided *Martinez*, Sheppard again raised the ineffective assistance of trial counsel claim in a motion under Rule 60(b). *Martinez* and the later case of *Trevino* excuse the previously-found federal habeas procedural default caused by state post-conviction counsel's failure to raise ineffective assistance of trial counsel in the first state post-conviction proceeding. Although the court says that Sheppard's claim for relief under Rule 60(b) filed after the Supreme Court's holding in *Martinez* is a "second or successive habeas petition," Sheppard's claim for relief under Rule 60(b) cannot be a "second or successive habeas petition" because he is not asking to relitigate a claim already decided on the merits in the federal habeas proceeding. Instead he is asking that the federal court's holding that the ineffective assistance of trial counsel claim that was found to be procedurally defaulted due to the failure to raise it in state post-conviction proceedings be excused under the new rule announced in *Martinez* and *Trevino*. If the earlier finding of procedural default is now excused by *Martinez* and *Trevino*, Sheppard would be entitled to a full hearing on the merits of his ineffective assistance of trial counsel claim. Such a hearing might well lead to a finding that the court's own finding of defective counsel was correct. Therefore, the writ would issue requiring a new trial of the state sentencing hearing.

## V. Conclusion

The court clearly wants to avoid issuing the writ of habeas corpus that would require a new trial at the sentencing phase of the case. But procedural maneuvering is the only way the court can contrive to avoid reaching the merits of either the constitutional issue regarding jury misconduct that undermined Sheppard's mitigation defense or the constitutional issue regarding the right to effective counsel. In order to avoid issuing the writ by avoiding the merits of the

main constitutional issues, it became necessary for the court first to hold that counsel was not diligent but was derelict and ineffective. Only by invoking procedural default in this way could the court then disregard the testimony at the federal evidentiary hearing that the juror based his vote for death on his extra-judicial conversation with an outside "expert" witness, an egregious violation of the Sixth Amendment Confrontation Clause. But ironically this holding of defective counsel gave rise to a further constitutional claim of ineffective assistance of counsel under the Sixth Amendment.

Having specifically found defective representation, the court then holds that its original procedural finding concerning representation, when repeated as a constitutional violation, has now somehow become a "second or successive petition" requiring the court again to avoid reaching the merits. Everything, including irony itself, has now become a casualty of procedural default. Despite all of the constitutional violations—the Sixth Amendment confrontation and impartial jury violations, the Eighth Amendment mitigation violation based on the jury's misunderstanding of paranoid schizophrenia and the Sixth Amendment ineffective counsel violation—the court has managed to avoid reaching the merits of any constitutional claim.